# BUFFALO SUPERIOR COURT.

### Smith & Peters agt. Hiram E. Howard and others.

J., T. & S. were partners owing debts: J. sold out to T. & S. in *good faith,* and received from them upon the sale their note, endorsed by B. for their accommodation. T. & S. continued the business awhile as partners, and then failed, and made a general assignment in trust for their creditors, preferring this note, and providing for the payment, *pro rata,* of the debts of the old and new firms.

*Held,* that the creditors of the old firm had no equity against the partnership property of the old firm in the hands of the new firm or their assignee; that the preference of the note was not fraudulent; that while partners are administering their own affairs their creditors have no lien upon or equity against the partnership effects.

The right of partnership creditors to have partnership effects applied in equity to their debts, is a right derived through the partners, and if they have no such right their creditors have none.

*Held,* also, that the appropriation of the individual property of the partners to the payment of the partnership debts in preference to the individual debts is not fraudulent or illegal.

A provision in such an assignment authorizing the property of an insolvent debtor to be applied in part to the payment of the debt of another person, for which neither he nor his property is bound, in preference to his own debts, affords a *conclusive* presumption of an actual fraudulent intent. A creditor provided for by a prior clause in the assignment may avoid it by reason of such fraudulent intent.

*October General Term,* 1859.

The defendants, Calvin F. S. Thomas, Jedediah H. Lathrop, and Solon H. Lathrop were partners in trade at the city of Buffalo. On the 3d day of December, 1856, believing themselves to be solvent, Jedediah sold out all his interest in the business and assets of the firm to his co-partners, and retired from the firm. They gave him for his interest, $2,000 in money, their note for $7,500, endorsed by one Dennis Bowen for their accommodation, and assumed to pay all the debts and liabilities of the firm. *This transaction was made in good faith.* Calvin and Solon continued the business as partners until the 24th day of February, 1857, when they failed, and made a general assignment of all their *partnership and individual* property to the defendant,

Howard, in trust for creditors, to be converted into money, and applied:

*First,*—To the payment of all notes, &c, made by either of said firms, and endorsed for their accommodation by either Dennis Bowen or Hiram E. Howard, and if not sufficient to pay them in full, then *pro rata.*

*Second,*—To the payment of certain notes made by the old firm, and particularly described; and to the payment of certain notes made by the new firm, and described; and if not sufficient to pay in full, then *pro rata.*

*Third,*—To the payment of all other debts of both of said firms, except those mentioned in class fourth; and if not sufficient to pay in full, then *pro rata.*

*Fourth,*—To the payment of certain drafts drawn by Perkins and Selden upon the new firm, and accepted by it.

" *Fifth,*—By and with the residue, if any there shall be, said party of the second part shall pay all other debts, claims, and demands *against the said parties of the first part, or either of them;* or if such residue be not sufficient therefor, then it shall be applied, *pro rata,* to the payment of said debts, claims and demands."

The assignment recited that " the parties of the first part are justly indebted in considerable sums of money, which they are unable to pay with punctuality, or *in full.*" The assignors owed partnership debts, and joint debts, and each owed individual debts. They had partnership property, and each had individual property. Their individual debts and assets were unequal. On the 28th of March, 1857, the assignors made and delivered to said assignee, Howard, an instrument by which they sought to change the said fifth clause of said assignment.

The plaintiffs are creditors of the old firm, and after judgment against all the member of the old firm, and execution returned, unsatisfied, brought this action. The special term declared the assignment void, so far as it conflicted with the right of the plaintiffs to recover the amount of

their judgment from the property which formerly belonged to the old firm, and directed an account of it in the hands of the assignee to be taken so far forth as it could be traced.

The defendants appealed.

C. TUCKER *and* J. GANSON, *for plaintiffs.*
S. G. HAVEN, *and* J. L. TALCOTT, *for assignee.*
ROGERS & BOWEN, *for assignors.*

By the court, MASTEN, Justice. The judgment of the special term, appealed from, cannot be sustained upon the principles upon which the judgment was evidently ordered. The complaint is framed upon the double theory that the assignment of the 24th of February was made in fact with the intent to hinder, delay, and defraud creditors. And also, that as creditors of the old firm, the plaintiffs had in equity a lien upon the property which had belonged to that firm, or an equitable right to a specific appropriation of that property to the payment of their debt, and that the assignment, to the extent that it interfered with that lien or right, was inequitable and void as against the plaintiffs.

The judgment of the special term, from its language and provisions, seems to be placed upon the latter theory.

The precise point of complaint on this branch of the case is, that the property which once belonged to the old firm, is by the assignment appropriated to the payment of the debts of the new firm, contracted after Jedediah retired, before the payment of the debts of the old firm.

In this branch of our inquiry, the first question to be explained and determined is one of fact.

It is whether the sale in December, 1856, by Jedediah to his partners was made in *good faith.* It is specifically found in the case, and the evidence fully supports the finding, that that sale was made in good faith. The estate which had belonged to the old firm became therefore the estate of the new firm. (*Story on Partnership,* § 358, 359 ; *Ex parte*

*Peake*, 1 *Mad.*, 354; *Ex parte Williams*, 11 *Vesey*, 3; *Ex parte Ruffin*, 6 *Vesey*, 119, *note* 8, *by Sumner.*)

If, at the date of the assignment to Howard, equity had become possessed of this property for the purpose of administering it, the sale by Jedediah Lathrop having been made in good faith, it would have applied the property first to the payment of the debts of the new firm.

For Jedediah, when he sold, did not reserve any lien upon the property and effects sold, but took merely the personal undertaking of his vendees to pay the debts upon which he was liable as a member of the old firm.

If he had reserved a lien upon the property for the payment of the debts owing by the old firm, then the creditors of that firm might have availed themselves of that lien. In that case, their right would have vested entirely upon, and been worked out through his. But he having reserved none, they have none. For when partners are administering their own funds, the partnership creditors have no lien upon those funds. (*Kirby* agt. *Schoonmaker*, 3 *Barb. Ch. R.*, 46; *Ketchum* agt. *Durkee*, 1 *Barb. Ch. R.*, 480; *Meech* agt. *Allen*, 17 *N. Y. R.*, 300; *Ruffin ex parte*, 6 *Vesey*, 119; *Williams ex parte*, 11 *Vesey*, 4; *Fell ex parte*, 10 *Vesey*, 347; *Kindall ex parte*, 17 *Vesey*, 514.)

The legal obligation upon a member of a partnership to pay the debts owing by the firm, by himself as a member of the firm, is just as perfect and binding as is the obligation to pay a debt owing by him individually. And while he controls his own affairs, he has the perfect legal right to apply his individual, as well as partnership property, to the payment of the partnership debts; and he is not bound by those rules which a court of equity observes in distributing property under its control. (*Van Rossum* agt. *Walker*, 11 *Barb. R.*, 237.)

The same is also true as to partners. While they have control of their affairs, they may apply the partnership

Smith agt. Howard.

property to the payment of debts which are not partnership debts, but for which all the partners are bound.

But it is claimed that the assignment of the 24th of February, to Howard, in trust, was made with the intent in fact to defraud creditors:

*First,*—Because the note given by the new firm to Jedediah upon the sale by him is preferred. The note was endorsed by Mr. Bowen for the accommodation of the new firm. It was a valid note in the hands of Jedediah at the time of the assignment, and if not paid by the makers, Mr. Bowen would be obliged to pay it. The preference of the note in the assignment was necessary for his protection. And such is the language and intent of the assignment. The property appropriated by the assignment to pay it was the property of the makers of the note, and in which Jedediah had no interest. He was not a party to the assignment. If this new firm had been closed up in equity, the payment of this note to Jedediah out of its assets would have been decreed before the payment of the plaintiffs' debt, and if he had been insolvent, equity would distribute the avails of the note to Jedediah's individual creditors (in the absence of lien) in preference to the plaintiffs. (*See cases above cited.*) I am unable to see any legal objection to the preferential provision for this note in the assignment.

*Second,*—By reason of the following clause in the assignment.

" *Fifth,*—By and with the residue, if any there shall be, said party of the second part shall pay all other debts, claims, and demands against the said parties of the first part, or either of them; or if such residue be not sufficient therefor, then it shall be applied, *pro rata,* to the payment of said debts, claims and demands."

By the provisions of the assignment preceding this fifth clause, the payment of all the debts and liabilities of both the old and new firms was directed to be made.

Read in that connection this fifth clause provides for the

payment of all the debts which the assignors owed *jointly*, but not as partners, and of all debts which they owed *individually*. And if the residue of the assigned property was not sufficient to pay them in full, it should be applied to the payment of them *pro rata*.

The assignment embraced all of the partnership, the joint, and the individual property of the assignors.

Upon the face of the assignment it appears that the assignors were insolvent; and that the debts embraced in the fifth clause (which is the last class of debts,) would not be paid in full: for the assignors declare that they " are justly indebted in considerable sums of money, which they are unable to pay with punctuality, or *in full*."

This fifth clause authorizes and directs both the share of one of the assignors in the joint property, and also his individual property, without regard to its value, or to the amount of his individual debts, and without regard to the value of the property, or to the amount of the individual debts of his co-assignor, to be applied to the payment of the debts of his co-assignor, for which neither he nor his property was liable at law or in equity, equally with his own just debts. It, in short, authorizes the property of an insolvent debtor to be applied in part to the payment of the debt of another person, and for which neither he nor his property is any wise bound, before his own just debts are satisfied.

Such a provision, in an instrument like the one under consideration, affords a conclusive presumption of a fraudulent intent on the part of the assignors.

This provision does not render the assignment void as between the assignors and the assignee, but only as to those creditors who do not assent to it.

By the assignment, the assignors placed the assigned property beyond their control. And they had no power to change the provisions of the assignment. (*Bell* agt. *Holford*, 1 *Duer R.*, 58 ; *Porter* agt. *Williams*, 5 *Selden R.*, 142.)

If the assignment had contained the reservation of power in the assignors to alter it, in the respect they assumed to, or had conferred it upon the assignee, either alone or in conjunction with the assignors, it would have been as to creditors fraudulent and void upon its face. (*Barnum* agt. *Hempstead*, 7 *Paige R.*, 568; *Boardman* agt. *Halliday*, 10 *Paige R.*, 223; *Grover* agt. *Wakeman*, 11 *Wend. R.*, 403; *Sheldon* agt. *Dodge*, 4 *Denio R.*, 217; *Strong* agt. *Skinner*, 4 *Barb. S. C. R.*, 546; *Averill* agt. *Loucks*, 6 *Barb. S. C. R.*, 470.)

The supplemental assignment, of March 28, has not, therefore, any effect upon the rights of the plaintiffs.

It is quite apparent that the assigned property was not sufficient to reach the debts provided for in the 5th clause; the case in fact shows that it would be in the execution of the trust, exhausted before the third class were fully paid.

It does not distinctly appear whether that fact was understood and known at the time of the making of the assignment.

It is therefore necessary to enquire whether the fact, clearly established, that it was ascertained and understood at the time of the making of the assignment, that the assigned property could not reach the debts provided for in the fifth clause, would disturb the presumption of fraud furnished by the fifth clause?

Because if it will, I think, the judgment should not be affirmed.

For the judgment of the special term went upon grounds which are not tenable; and did not go upon the ground that the assignment is void as to creditors, by reason of the fraudulent intent evidenced by the fifth clause.

The defendants, therefore, if it will avail them anything, should have an opportunity to make the proof.

If, however, it will avail them nothing, the judgment should be affirmed. For the judgment then is less beneficial

to the plaintiffs than they are entitled to, and that is no reason for reversing it on the defendants' appeal.

In *Goodrich* agt. *Downs*, (6 *Hill*, 438,) the assignment provided that *if any surplus remained* after paying the debts specified, it should be paid to the assignor. It appeared that the property assigned was not sufficient to pay the creditors provided for in the assignment. There were other creditors. The assignment was held to be void.

In delivering the opinion of the court, Justice BRONSON said, "It is said that there will be no surplus for the debtor, after paying the creditors who are provided for by the assignment, and consequently that the deed may stand. The parties to the assignment having expressly provided for a surplus, are not at liberty to say that such a state of things was not contemplated at the time the conveyance was made. They are estopped by the deed to deny it."

The same point was decided by the court of appeals, in *Barney* agt *Griffin*, (2 *Comstock R.*, 365.)

In deciding it, the court say, " The deed was void upon its face, and it cannot be made good by showing that there will be no surplus for the debtor, after paying the preferred creditors. The parties contemplated a surplus, and provided for it; *and they are not now at liberty to say that this was a mere form which meant nothing.* And although it should ultimately turn out that there is no surplus, still the *illegal purpose which destroys the deed is plainly written on the face of the instrument, and there is no way of getting rid of it.*"

The same question was again decided in *Collomb* agt. *Caldwell*, (16 *N. Y. R.*, (2 *Smith*,) 484;) and it is there said that the provision afforded a conclusive presumption of an actual fraudulent design on the part of the assignor.

In the case at bar, I am of the opinion that the effect of the fifth clause upon the validity of the assignment cannot be overcome by any proof. That clause *written upon the face* of the assignment furnishes not a *disputable*, but a *con-*

*clusive* presumption of an actual fraudulent intent on the part of the assignors.

This being so, the assignment—the deed is void *in toto* as against the creditors of the assignors; the statute by the word of its power so pronounces. (2 *R. S.*, 137, § 1.)

It was said upon the argument, that the fifth clause does not evidence any intent to hinder, delay, or defraud the plaintiffs, who are provided for in the assignment in a class prior to the fifth; and that the assignment is void only as to the creditors intended to be hindered, delayed, or defrauded.

This position was most conclusively answered by the court of appeals in the case of *Leitch* agt. *Hollister*, (4 *Comstock*, 211.)

" The assignment may be avoided by any creditor, whether provided for or not, who has not voluntarily become a party to the trust, or by his own act ratified and confirmed it. It must, when executed, bind all, or none, of the creditors of the assignor. Otherwise the condition of one, for whom provision was made by a fraudulent trust without his agency, would be worse than if he had been excluded altogether."

A creditor would be more effectually defrauded, if his hands could against his will be thus tied, while other creditors were avoiding the assignment, and securing the application of the assigned estate to the payment of their debts to the exclusion of his.

The judgment must be affirmed.