By the Court—Monell, J.
Hone of the objections to the assignment arising under the act of 1860 (Laws of 1860, ch. 348) are well taken. The acknowledgment by the assignors was in due form, and properly indorsed. Whether the schedule was properly annexed or sufficiently acknowledged does not seem to me to be material in this case. If omitted entirely, or wholly unacknowledged, the assignment would not therefore be fraudulent and void. It might be, in part, incapable of execution, and the preferred creditors might lose their preference; but the assignment would be valid and the trusts capable of execution, though not precisely in the form designed.
There is nothing in the act which requires schedules to be annexed in any particular manner, nor that they shall be *416 separately acknowledged. It was, in this case, firmly attached to the assignment, and thus, forming a part of the assignment, was introduced in and covered by the aekn owledgment.
It does not follow that because the omission to do any or all of the acts required by the law of 1860, may render an assignment inoperative and void, that it is thereby rendered fraudulent also.
Nor is the right to make an assignment limited to residents of this State. The section of the act which requires that assignments shall be recorded in. the clerk’s office of the county where the assignors resided at the delivery of the assignment, must receive a liberal construction. It should not be interpreted so as to exclude a non-resident from the right to make an assignment of property within the State, merely because he is a non-resident. The purposes of the statute, in such case, are answered by recording the assignment in the county where the assigned property is
The only remaining question to be examined is whether the assignment is fraudulent and void as to the plaintiff, by reason of the direction in it, after paying all the partnership debts, to pay all the private and individual debts of the assignors, in full, if sufficient, and if not sufficient, then to pay them ratably.
The assignors were partners; they assigned all their property, individual as well as partnership, and directed first the payment of all their partnership debts, and then, if anything remained, the payment of their individual debts. The plaintiff is a creditor of the firm, and his debt is included among those which are to be paid in full, before the individual creditors get anything.
I can discover nothing upon the face of the assignment which would render it fraudulent and void. Partnership property must be devoted to the payment of partnership debts; so individual property must be applied to the payment of the individual debts. Any diversion from these rules would, at the instance of a creditor deprived *417 of his equitable right, render the assignment void. (Wilson v. Robertson, 21 N. Y. R., 587.)
The assignment in question does not disclose whether the assignors had or not any individual property. The inference, if we are permitted to infer anything, is that their whole property consisted of partnership effects, and these were appropriated to the payment of the partnership debts. If individual property did in fact pass to the assignee, it would be difficult to see wherein the plaintiff, a creditor of the firm, could be defrauded by such an increase of the fund, out of which were to be paid the partnership debts.
, The only evidence outside of the assignment which it is claimed evinces a fraudulent intent is, that the assignors, at the time of the assignment, each owed, individually, debts to different persons, the aggregate amounts of which due by them respectively were unequal. In other words, the individual debts of one of the assignors were larger than the other.
Except so far as the rights of creditors are concerned, partners and individuals have the right to do as they please with their property; and, if they chose one to make a gift to the other, and to apply his property towards the payment of a debt for which he was in no way- liable, no one beside his creditors can object.
The priuciple established by Collomb v. Caldwell (16 N. Y. R., 484) is decisive of this case. There both copartnership and individual property of the assignors was assigned. The assignment, after providing for the payment of the partnership debts, directed the surplus to be returned to the assignors, without providing for their individual creditors. It was held that the assignment was void as to the individual creditors. Comstock, J., says, “The Caldwells, being insolvent, assigned the estate which they owned together, to pay debts which they jointly owed; but one of them also owed debts individually, which were entitled to be paid out of the residue of his share iu the fund assigned. Instead of making provision for *418 these individual debts, the whole fund was tied up under a trust, and after the particular trust should be satisfied, the residue was reserved to the assignors. * * * * *
The real estate assigned * * * was held by them as tenants in common. The interest of each was therefore his individual property, as much so as his separate estate. Thus, they had no right to convey in trust with a reservation in their own favor, leaving their individual creditors unprovided for.”
So far as I can judge by an examination of the assignment, I am unable to discover any fraud in law, and the proof received on the trial does not show any in fact. It was therefore error to adjudge the assignment fraudulent and void, and made with intent to hinder, delay and defraud the plaintiff.
The judgment must be reversed, and a new trial granted, with costs to abide the event.
Robertson, J.
I am not prepared to say how far a reference, in an assignment to pay creditors, to a schedule annexed, which never was annexed, in the absence of proof that it was present at the execution and intended to be annexed, but omitted by an accident, may make it void. Therefore, while concurring with my brother Monell in his other views, I am not prepared to say that it may not. But I am satisfied, as I was at Special Term, from inspection of the papers and fastening, that there was prima facie evidence of the annexation of the schedule in question, before execution, and no rebutting evidence. Since this case was before me at Special Term, another case (Morrison v. Atwell, 9 Bosw., 503,) has been decided at a General Term of this Court, which involved the question of the validity of a partnership assignment of partnership property, by which individual creditors of each assignor were made to partake, pro rata with those of the other, of their separate interest in such partnership property and its proceeds. The question was then fully argued, and it was held that it was not to be considered invalid as *419 to preferred partnership creditors. In the present case I overlooked the fact, which was not called to my attention, that the plaintiff was a partnership creditor, and it was not made a point before me on the trial that he could not raise an objection to the assignment on that score. I participated in such decision, after fully examining the question, and coincided in the views of the Court. And it appears to me proper, in uniting to reverse my own decision in the present case, that I should give my reasons therefor.
The plaintiff is a partnership creditor of the firm of Byerly & Allen, and as such, preferred in their assignment. The fourth clause of that instrument provides for applying the interest of one partner in the surplus of partnership property, to pay another partner’s debts. Such clause undoubtedly renders it voidable, as against such property, by the individual creditors of the former. (Collomb v. Caldwell, 16 N. Y. R., 484; Wilson v. Robertson, 21 N. Y. R., 587; Gartside v. Walton, Mss. in Supr. Ct., Dec., 1861.) But the question still remains, whether it can be avoided for that reason, by preferred partnership creditors, such as the present plaintiff. That will be found to depend upon a further question, namely, whether the right of creditors to avoid an assignment by their debtor is derived from the statutory provision which, as to creditors, annuls transfers of goods and chattels alone, by such debtor, in trust for himself, (2 R. S., 135, § 1,) or that which avoids conveyances of either lands or goods, made'with intent to prejudice a certain class of persons as against such persons, (2 R. S., 137, § 1,) which materially differ in form, object and substance. If from the first, it must be determined whether the whole instrument or only the offending clause is avoided; if from the second, whether any other persons can object than those whom alone such clause could prejudice, and, inferentially, whether the right of such persons to object may, by embarrassing other parties who have no such right directly, give the latter indirectly the same privilege.
*420 In the case of Wilson v. Robertson, just referred to, {ubi. sup.,) the assignment in controversy was of the property of a partnership to pay certain creditors of one of the partners (Crocker) jointly with partnership creditors. The Court seems to place the right to object wholly upon the statutory provision first alluded to. “ It may be seriously doubted,” they say, “ whether the assignment should not be regarded * * as void under the statute declaring ‘ all transfers, &c., made for the use of the person making the same, void as against the creditors of such person.’ The assignment is made for the benefit of Crocker, as its purpose is to liquidate and discharge his individual debts. The transfer may therefore be said to be made in trust for the use of one of the assignors. This is the spirit of the transaction if not its legal effect.” The same reasoning, of course, is equally applicable to an instrument whereby, after an application of the joint property of joint debtors to pay their joint debts, the residue is applied to their several debts promiscuously and pro rata.
It is" of course unnecessary that joint debtors should, by the same instrument, apply their joint property to pay both their joint and several debts; after securing the payment of the first by an assignment, the appropriation of the interest of either in the residue to pay the several debts of the other, could not prejudice, in any way, their joint creditors. The question then arises, whether by making such appropriations in such order of payments in the same instrument, the whole is infected by the vice of the last appropriation. In Curtis v. Leavitt, (15 N. Y. R., 116,) in the Court of Appeals, (in which the prior case of Barney v. Griffin, (2 N. Y. R., 365,) in the same Court, is discussed and disapproved of,) Justice Comstock disposed of such question in a decisive manner. - After laying down the general rule as being the principle that where a statute simply declares voidness without, in the strictest terms, embracing the whole instrument, a particular provision may be inoperative and the others good, he argued that “ trusts in personal estate, for the use of the *421 person who creates them, are not illegal or criminal, unless made with fraudulent motives. In themselves they are entirely innocent. They are simply declared inoperative' and void as to creditors.” In answer to the .question, whether it was a necessary construction of the statute that valid trusts must fail because contained in the same instrument in which some were void, he unhesitatingly responds in the negative, stating that “ a single deed-may have a conveyance, a transfer or an assignment upon a valid trust, and another upon avoid one,” and adding that “the terms [used in the statute] do not, by inevitable construction, apply to the instrument. * * * - They are satisfied by applying them to the inoperative provision only.” As authority for that doctrine, he relied upon the case of Doe v. Pitcher, (6 Taunt., 363,) in which the effect of a statute (9 Geo. II, ch. 36) declaring “all gifts, grants, conveyances, appointments, assurances, transfers and settlements of lauds” for charitable uses void, unless made in a prescribed special form, was involved, and a deed containing a clause for a charitable use in a different form from that so prescribed, was held not to be void. In that case, Gibbs, Oh. J., said, “I cannot find in this act any words which make the entire deed void.” Such statute is full as comprehensive as that under consideration. Although, therefore, the fourth clause of the present assignment may create a trust for the grantor’s use, and thus avoid that provision, it does not necessarily avoid the whole instrument, which has nothing to do with such trust.
But it is urged that such fourth clause of the instrument in question contains evidence on its face of an intent thereby to “hinder, delay or defraud creditors” of one or both of such assignors, in two modes. First, that such instrument is an entirety, and an intent to accomplish any wrong by any part of it to any one, makes it wholly void, and secondly, that the privilege of the parties intended to be defrauded to assail it, may prejudice the rights of the parties not intended to be so defrauded, by hindering them in reaching the property by execution. And that, *422 therefore, it is entirely void under the second statutory provision before referred to. (2 R. S., 137, § 1.)
The language of that provision is, “every conveyance * * of any interest in lands or in goods * * made with intent to hinder, delay or defraud* creditors or other persons of their lawful * * demands, * # as against the persons so hindered, delayed, and defrauded, shall be void.” It is a transcript of a prior one in the Revised Laws of 1813, (1 R. S., 75, § 2,) which again is condensed from an English statute. (13. Eliz., eh. 5.) The language of that is, “Every feoffment * * of lands * * and chattels * made for any intent before declared and expressed, shall be, as against that person, * * whose action * # are, or might be in anywise disturbed, * * utterly void.” The intent so referred to is contained in the recital of such, enactment, and described as “malice, * * to delay * * creditors or others of their lawful actions.” Three provisions in the same chapter, prior to that under consideration, declare conveyances and transfers having certain defects to be void as against the creditors of their grantors or makers. (2 R. S., 135, § 1; Id., 136, §§ 5-9.) The first of such defects is that already referred to as being for the grantor’s use; the second is an omission to change or continue the change of possession; and the third is a failure to file a mortgage of chattels in the proper office. In each of those cases such transfers are said to be void as against “all the creditors” of the party executing them.
The statute of Elizabeth, before referred to, is stated in the case of Pauncefert and Blunt (referred to in Twyne's Case, 3 Rep., 80, and therein said to be found in Lane, pp.. 44,45,) to have merely “ expounded that this was the common law before,” referring to the use therein of the term “ declare.” And in Cadogan v. Kennett, (Cowp., 436,) Lord Mansfield said, “that the common law would have attained -every end proposed by ” such statute. The language of that statute is very emphatic in confirming the voidability of the conveyances intended to be reached by *423 it, to “ that person ” in the singular number. And although our statute, by inserting the intent in the body of it, instead of leaving it in a recital, is compelled to use the plural; the change of phraseology from that used in the preceding sections just referred to, namely, of “ all creditors ” generally, to those “ hindered, delayed and defrauded” by the particular conveyance, shows an intent thereby to limit the classes of persons who could avail themselves of such objection.
Moreover, the intent with which instruments were executed, which were voidable by creditors, was made, for the first time, exclusively a question of fact, without any presumption of law, except in case of non-delivery of possession, and not a question of law, by the Eevised Statutes. (2 E. S., 137, $ 4.) And although Courts continue to assert the right to pronounce conclusively upon the fraudulent intent of a particular provision in an assignment, and its effect on the 'whole instrument, they have never gone so far as to hold, in the face of such statutory enactment, that an intent apparent on the face of a particular provision in an instrument by means of it to defraud particular creditors, should be construed to be the object of other provisions in no wise connected therewith, which merely have the misfortune to be in the same instrument. There is no such presumption that if an assignor intends to accomplish an illegal purpose by one provision in an instrument he necessarily intends to do so by every one of "the others which are wholly disconnected therewith. The language of the statute of 9 Geo. II, ch. 36, held not to refer to the whole instrument, in Doe v. Pitcher, already referred to, (libi sup.,) was fully as broad enough to cover it, as the provision under consideration.
It appears to me, therefore, perfectly clear that in regard either to the class of persons entitled to attack the assignment in question, if any part of it has a fraudulent purpose to subserve, or the right to impute such fraudulent purpose to the whole of it merely because one of its provisions has such fraudulent intent as to one class of persons, there *424 is nothing in the statutory provision last referred to directly authorizing the plaintiff in the case to attack it. I am aware that it has been assumed in several cases, from that of Hyslop v. Clarke, (14 Johns., 458,) down to that of Wakeman v. Grover, (4 Paige, 23, affirmed 11 Wend., 187,) and of Goodrich v. Downs, (6 Hill, 438,) that a fraudulent intent manifest in one provision was a fraud affecting all. But in none of such cases has it been discussed or held that an assignor could not have an illegal intent as to one provision in an instrument and an honest one in all the others; or that the former tainted the whole. In most of them the fraudulent provision affected all the creditors and appeared to be part of a general purpose on the face of the instrument. In the case of Feedler v. Day, (2 Sandf. S. C., 594,) decided in this Court, the assignment was held entirely void, solely upon the ground that a fictitious debt preferred therein would have defrauded all the creditors of the assignor.
It is claimed, however, that although, primarily, an intent to injure particular creditors by a particular provision in an instrument is not equivalent to a direct intent to injure others, and therefore only the parties particularly intended to be injured could complain of it, yet that a party must be presumed to have intended the natural consequences of his acts, and that the power of such special creditors to interfere with such instrument becomes a means of embarrassing other creditors preferred in it, which makes such result the intent in law of such provision. This highly artificial reasoning derives some countenance from the language of Gardiner, J., in Litch v. Hollister, (4 N. Y. R., 211,) and of the opinion given in Smith v. Howard, (20 How. Pr., 121.) The former says, an assignment, “when executed, must bind-all or none of the creditors of the assignor; otherwise the condition of one for whom provision was made by a fraudulent trust, without his 3’ency, would be worse than if he had been excluded (together.” But this was said of an assignment to credit-rs directly, to secure their debts, without any provision *425 for the surplus, after their payment, and in order to sustain it, so as to take the case out of the rules established in Goodrich v. Downs, and Barney v. Griffin, before referred to, (ubi sup.) No explanation was given how “ the condition” of a person provided fot would be “worse” than “if excluded altogether.” And certainly the apprehension of such a result was not necessary to render a mortgage directly to creditors to secure them, valid as against other creditors. It is fully established that mere injury to a particular creditor by a particular sale, does not make such sale fraudulent. (Holbird v. Anderson, 5 T. R., 25; Pickstock v. Lyster, 3 M. & S., 371.)
It was argued in Smith v. Howard, (20 How. Pr., 121,) in regard to an assignment containing a clause somewhat similar to that under consideration, “that a creditor would be more effectually defrauded if his hands could, against his will, be thus tied, while other creditors were avoiding the assignment and securing the application of the assigned estate to the payment of their debts, to the exclusion of his.” This reasoning does not embrace the fact that the parties attempted to be defrauded, and who alone were primarily entitled to overthrow any part of the assignment, were separate creditors of separate partners. It overlooks the equitable rule that partnership property must first be applied to pay partnership debts, and individual property to individual debts, (Wilder v. Keeler, 3 Paige, 167,) that such rule is for the benefit of the partners, and not of the creditors, (Robb v. Stevens, Clarke, 191; Ketchum v. Durkee, 1 Barb. Ch., 480; Kirby v. Schoonmaker, 3 Id., 46,) and that if individual creditors 'should succeed in overthrowing the whole assignment for the attempt to defraud them, they would get nothing until the debts of the preferred partnership creditors were all paid. So that the only effect of setting aside such assignment at the instance of the former would be to derange the order of payment among the latter. A novel result, whereby the party endeavored to be injured can only repel the injury for the benefit of others, and a party benefited can only acquire further benefits *426 through the medium of the attempted injury to the former. The probability of an attempt by such individual creditors for such purpose to overthrow the whole assignment, unless absolutely necessary to destroy that of the surplus, after paying partnership creditors, could hardly be contemplated as part of a fraudulent purpose by the assignor, hostile to the latter.
But, in fact, the order of equities of partnership and individual creditors in partnership funds, virtually divides them in two parts; one being so much as is necessary to pay the former, and the other the residue subject to equities between the partners for over contributions in paying debts, or over drafts of their shares of the profits. They are as distinct in their nature as two kinds of property, and although joined in an assignment of them, for different purposes, by one instrument, motives in regard to the disposition of one thereby cannot be made to operate on the disposition of the other, in regard to which no such or similar motive exists. The error arises from considering the property assigned entire, the creditors of the firm and individual partners as one body having equal rights, the instrument as one, and the purpose as to the whole, single.
Moreover, the mere operation of law by which a preferred creditor may be postponed, to one who is not, or, vice versa, even if contemplated by an insolvent debtor in mak~ ing an assignment, does not necessarily make it void on account of a fraudulent design, provided thereby all his property is relinquished to his creditors, without any reservation for his own benefit directly, by provisions to that effect, or indirectly, by delaying the collection of all their debts, or coercing or alluring them into an abandonment of part of their claim. So far as partnership creditors were interested, nothing of either kind was attempted, and so far as individual creditors were concerned, they were deprived of no rights by the trust, in favor of the former, and should not, therefore, upon any principles of justice, be allowed to disturb it. Ho statutory provision, except requiring it in the clearest and most express terms, *427 could be coustrued to produce such a result; and as has already been seen, that last referred to (2 R. S., 137, § 1) does not demand any such interpretation, but on the contrary, was intended to give a party wronged only the power of redressing his own'wrongs, and not those of others.
There was no evidence in this case that the assignors had any other but partnership property, and it does not appear, therefore, on the face of the assignment that there was any other which passed under it, as it did in the case of Collomb v. Caldwell, (16 N. Y. R., 484.) But in that ease it was held that the reservation of a surplus of individual property, after applying it indiscriminately with partnership property to paying partnership debts alone, made the assignment void as to individual creditors. That, so far as such individual creditors were concerned, violated the equitable rule before alluded to. They were entitled equally at least with such partnership creditors to seize such individual property to satisfy their claims, and creating a trust for the use of the debtor which prevented it, ' violated the statute before alluded to. Such reservation made such assignment, therefore, as to such individual property clearly void. The mingling of such property with partnership property, in a common fund, may have made the whole assignment void, certainly as to individual creditors, who would be, even in such case, obliged to yield to the prior rights of partnership creditors as to partnership property. The Court of Appeals, in fact, recognizes in that case both the principles now presented, by confining the avoidance of the assignment to individual creditors, and by conceding that a reservation of a surplus . of partnership property to assignors, after paying partnership creditors, instead of appropriating it to separate creditors, was not fraudulent.
I feel, therefore, fully satisfied that the assignment in question is not void as ágainst the plaintiff, under either statutory provision before referred, and I concur in the views taken by my brother Mohell as to the statute of *428 1860. I therefore unite in the reversal of the judgment appealed from, and the order for a new trial.