## JOHNSON *v.* MONELL.

### September, 1866.

The mere omission of one purchasing goods on credit, to disclose the fact that he is insolvent and unable to pay, is sufficient, without any affirmative representation, to render the purchase fraudulent and the sale void.

Wallace Johnson sued Henry Monell and Henry B. Crampton in the supreme court, to recover possession of merchandise, which he alleged that the firm of Warner & Co. procured from him by false representations, upon credit, and then, being insolvent, transferred to the defendants by a general assignment in trust for the benefit of creditors. The facts appearing on the trial, some details of which are mentioned more fully in the opinion of MORGAN, J., were, in brief, that on December 27, 1859, Warner & Co. addressed a letter to the plaintiff, asking him his lowest price for two hundred bushels of seed, to which the plaintiff replied, making an offer, and requesting acceptance by telegraph. Warner & Co. responded by telegraph, accepting the offer, on the 29th of December. The terms of payment were not specified in this correspondence. The seed was forwarded by plaintiff on the day that the telegram was sent.

Plaintiff testified on the trial that he had done business with Warner & Co. for about four years, and had shipped goods in the same way on correspondence, and generally got pay on their receipt; though, in some few instances, a few days elapsed before they sent the money. Plaintiff was allowed, against the

Johnson *v.* Monell.

objection and exception of defendants, to testify that the general usage when goods were shipped in that way, with reference to payment, was to pay cash after a sufficient time had elapsed to inspect the goods.

On January 4, 1860, Warner & Co. executed an assignment for benefit of creditors, they then being hopelessly insolvent.

In response to a motion for a nonsuit at the close of plaintiff's evidence, the judge ruled that whether there was a fraudulent intent on the part of Warner & Co. at the time of buying the seed, not to pay for it, was a question of fact for the jury. To this exception was taken.

Warner, of the firm of Warner & Co., being called as a witness for defendants, testified that the firm, stopped payment on the evening of January 4, because drafts they had drawn on Bierce of New York for five or six thousand dollars had not been honored. That they drew checks on the 3rd for considerable amounts, and on the 4th overdrew their bank account; that they did not conclude to stop payment until the 4th.

The judge refused defendant's renewed request for a nonsuit, upon the same ground as before, and instructed the jury that if they should find that Warner & Co., with knowledge of their insolvency, and having in contemplation the making of the assignment, purchased the property with the intent not to pay for it, they were guilty of a fraud which would avoid the contract, and title did not pass; and that if they were so insolvent at the time of the purchase, and knew themselves to be so, and were intending to make the assignment, it was evidence of a fraudulent intent on their part not to disclose to the plaintiff their insolvency at the time of the purchase; that if they did not intend to pay for the property, and did intend to cheat the plaintiff out of the price, this alone would make the sale fraudulent and void, although they resorted to no act or contrivance to mislead the plaintiff.

The judge refused to comply with defendant's request to charge the jury that the mere intent to get the property without paying for it, manifested by no fraudulent acts, words or declarations, would not avoid the sale. To this refusal exception was taken.

The jury rendered a verdict for plaintiff against one of the defendants (no demand having been proved to have been made on the other), and the supreme court, at general term, affirmed the judgment entered on the verdict, without assigning their reasons.

John H. Reynolds and N. A. Woodward, for defendant, respondent.—The question as to what was the usage in regard to payment, when goods were shipped as these were, was improper, since, 1. It calls for an opinion from one not an expert. 2. It assumes there is a general usage where none has been shown. "A local usage cannot be given effect to vary a contract." 7 Hill, 497; Vail v. Rice, 5 N. Y. 155. The nonsuit should have been granted. Lupin v. Marie, 6 Wend. 77; Conger v. Ennis, 2 Mass. 236; Mitchell v. Worden, 20 Barb. 253; Nichols v. Pinner, 18 N. Y. 295; Hennequin v. Naylor, 24 N. Y. 139. The charge of the judge that the intent not to pay for the goods would make the sale fraudulent, although no act or contrivance were resorted to for the purpose of misleading, was erroneous. Cases cited above, and Smith v. Smith, 21 Penn. 367; Fisher v. Conant, 3 E. D. Smith, 199; 2 Pars. on Contr. 270, 266; Ward v. Woodburn, 27 Barb. 346; George v. Parker, 25 Id. 141.

H. C. Day, for plaintiff, respondent.—The charge of the judge was correct, and the verdict was sustained by the evidence. Nichols v. Pinner, 18 N. Y. 295; Nichols v Michael, 23 Id. 264; Hennequin v. Naylor, 24 Id. 139.

MORGAN, J.—The case does not disclose all the circumstances which it is material to know in order to form a satisfactory opinion upon the main question involved in the defendant's exceptions. All we know is, that Warner & Co. ordered the goods on December 29, 1859, and on January 4 thereafter, executed a carefully prepared assignment, containing forty-three folios; and that all the parties, residing at different places, were got together the same day to execute it; that they stopped payment on that day, and acknowledged themselves to be insolvent.

Several other facts were proved, but not of a decisive char-

acter. The fact that Warner & Co. drew checks on the 3rd to
pay a considerable amount of indebtedness; that they over-
drew their bank account on the 4th, and stopped payment
on that day, because they had just learned that their drafts on
Bierce, of New York, for five thousand dollars or six thousand
dollars, had not been honored, are of no particular importance,
and furnish no satisfactory evidence that they did not suppose
themselves insolvent prior to that time, and contemplated
making an assignment. It would have been a fact of great,
and perhaps decisive, importance, if they had been able to show
that they had funds in the hands of Bierce, which gave them a
right to expect payment of their drafts, by the aid of which
they could have avoided a suspension of payments. It may be
a question of difficulty to determine whether it was the duty
of the plaintiff or defendant to obtain this information from
the witness. I do not see why the fact was not proved one
way or the other. I think, however, it is the misfortune of the
defendant, for it was for him to show the reasons which justi-
fied the failure of the firm on that day—reasons that did not
exist on December 29, when they ordered the goods. Nothing
appears to have occurred between December 29 and January 4,
to change the pecuniary responsibility of the firm, except the
dishonor of the Bierce drafts; and yet, we have no knowledge
that the firm had funds in his hands, or that they expected the
drafts to be paid when they were drawn.

In my opinion, it was for the defendants to account for the
failure of the firm of Warner & Co., and to show that it was
consistent with an honest intention to pay for the goods in
question when they purchased them. If we lay these (Bierce's)
drafts out of the case (which are not explained in the evidence),
there is nothing else which even tends to prove that the firm
of Warner & Co. were not hopelessly insolvent on December
29. It may be said that Warner did not know it when he or-
dered the goods of the plaintiff; but I am of opinion that
knowledge may be presumed in such a case. Every man may
be presumed to have some general knowledge of his pecuniary
condition. If unforeseen circumstances arise, which change
his situation, he is the proper party to explain them. In the
absence of satisfactory explanations, it is not a violent pre-

sumption to infer that a man who stops payment to-day, because he is hopelessly insolvent, must have known and contemplated it six days before.

I am also of opinion that it was proper to prove the usage or course of dealings between the parties. It shows that the plaintiff had a right to place some confidence in the pecuniary responsibility of Warner & Co. Whether the plaintiff contemplated giving a short credit, or whether, by the former course of dealings, he had a right to expect payment on delivery of the goods, does not seem to me to be at all material. In either case the question of fraud would depend upon the *intention* of the defendant's assignors; whether, knowing their insolvency, they purchased the property with the preconceived design of not paying for it.

I do not understand that the question objected to called for the general usage of business between other parties; and as far as it related to the former transactions between these parties, I think the evidence was unobjectionable. If it did not prove that a cash sale was intended, it tended to prove that a short credit only was within the contemplation of the parties. Looking at their former dealings, I think Warner & Co. understood that the plaintiff would deliver the goods without exacting payment on delivery; and their offer to accept a draft at one day's sight, or to send him the funds the first of the next week, was well calculated to put the plaintiff at ease and enable Warner & Co. to complete their arrangements to make a general assignment, if such a thing was then in contemplation.

It will be seen that the judge left it as a question of fact for the jury to decide, whether Warner & Co., knowing of their insolvency, made the purchase with a preconceived design of not paying for the property. This, I think, was correct as a legal proposition; but the question remains, whether there was sufficient *prima facie* evidence of fraud to authorize its submission to the jury. It was claimed by the defendant's counsel that a design of this character may exist without fraud, and hence he requested the judge to charge the jury, that, if such a design was manifested by no fraudulent acts, words or declaration, it would not avoid the sale. The judge, however, instead of denying the proposition in the abstract, informed

Johnson *v*. Monell.

the jury that they were to consider the question in connection with all the facts and evidence in the case.

I am of the opinion that the judge was not called upon either to affirm or deny the defendant's proposition. It was mere theory and speculation, without any practical value when addressed to the jury. Unless the evidence furnished grounds for presuming fraud, it was the duty of the judge to have non-suited the plaintiff. And this brings us back to the only question involved in the exceptions, and that is, whether there was sufficient evidence to authorize its submission to the jury, from which they would have a right to infer fraud on the part of Warner & Co. in the purchase of these goods.

1. Was there any evidence that they knew they were insolvent and unable to pay for the goods when they ordered them? I have already stated, that, in the absence of any satisfactory explanation of their failure on January 4, 1860, the jury had a right to presume that they were insolvent six days before, and that they must have known it.

2. Was there evidence tending to show that Warner & Co. *did not intend* to pay for the goods when they purchased them? This is doubtless the most difficult question to answer, and yet I think it was a question for the jury to decide under the circumstances of this case.

It cannot be said with propriety that a man who is insolvent, and expects to be obliged to stop payment and to make an assignment within a few days, believes that he can pay for a large bill of goods which he has just ordered, and upon which he expects to obtain a short credit. Indeed he has no right to order a bill of goods under such circumstances without disclosing his pecuniary condition.

Here it appeared that the firm of Warner & Co. had dealt with the plaintiff for four years or more, paying him promptly for goods ordered in the same way these were ordered. Just on the eve of stopping payment, on account of actual insolvency, they send another order, knowing or having reason to believe that they would not be able to pay for them. But, says the counsel, this is not so, for the firm stopped payment because their drafts on Bierce of New York were dishonored, which they did not know of on January 4. True, that is the

reason given by one of the members. Were the jury bound to believe this, without any evidence that the firm had funds in Bierce's hands? No reason is stated why Bierce dishonored their drafts. If he owed the firm that amount and had failed, it might satisfactorily account for the subsequent failure of Warner & Co. In the absence of any explanation to account for the dishonor of the drafts drawn by Warner & Co. on Bierce, the jury had a right, I think, to regard the reason given by Warner & Co. for their own failure as a mere pretext. It is said, however, that fraud must be proved and cannot be presumed. But it may be inferred from competent evidence; and, in the absence of a satisfactory explanation of the failure of Warner & Co. on Jan. 4, 1860, I think there was competent evidence that they were insolvent on Dec. 29, 1859, and that they knew it; and, under such circumstances, they had no right to order goods without any expectation of being able to pay for them at a future day. It is not enough to say that it was perhaps uncertain what day they would be obliged to stop payment. If they were insolvent and might be forced to stop any day, they cannot be permitted to say that they designed in good faith to pay for a large bill of goods ordered by them on December 29, and upon which they expected a short credit of three or four days at least, according to the usual course of dealings between the parties. They could not be indifferent in such a case, but the law will attribute to them a design not to pay unless they can show that they expected to be able to pay, and such expectation must be founded upon *data* which will satisfy the jury that it was honestly entertained.

3. It will not be necessary to refer to the authorities to show that the charge of the judge was a correct exposition of the law applicable to this class of cases. No doubt can be entertained upon this point. It is supposed, however, by the defendant's counsel, that, by the decisions of this court, an insolvent debtor may purchase goods without being guilty of fraud, if the vendor does not think proper to inquire into his circumstances; and that a mere omission of the insolvent debtor to disclose his insolvency is not evidence of fraud, which will operate to avoid the contract of sale. I am aware that such a doctrine has been enunciated in two or three cases; but on referring to the cases

themselves, it will be seen that it rests upon a very narrow foundation. In Nichols *v*. Pinner, 18 *N.Y.* 295, it was decided that the judge erred in refusing to instruct the jury that a merchant who is perhaps insolvent in April, may make an honest purchase of goods with the expectation of paying for them, although, contrary to his expectation, he is compelled to stop four months afterward. But, as was said by DENIO, J., in Brown *v*. Montgomery, 20 *N. Y*. 287, 293, " it does not countenance the position that a dealer who has been of known standing, but has suddenly failed in business, can go to those who were acquainted with his former character, but who have not heard of his failure, and innocently purchase their property on credit." So when it is shown that the insolvent purchaser made the purchase just on the eve of suspension and assignment, this fact alone, in the absence of explanatory proof, is sufficient to carry the case to the jury. Hennequin *v*. Naylor, 24 *N. Y*. 129, 139.

The question is, whether the purchaser made the purchase with a preconceived design not to pay for the goods. This is certainly the correct rule as between parties who have had former dealings together. Authorities are not wanting which hold that if the purchaser in such a case conceals the fact of his insolvency from the vendor, it is a fraud, and the property is not changed in the hands of the vendee. Durell *v*. Haley, 1 *Paige*, 492. If the purchaser knows himself to be insolvent, and has no reasonable expectation of paying for the goods, it is sufficient evidence of fraud to avoid the sale. Powell *v*. Bradlee, 9 *Gill & Johns*. 220; *Pars. on Contr*. 270, note *w*.

Every case must however depend in a great degree upon its own peculiar circumstances, and it is impossible to lay down strict rules which can be relied upon to solve future questions. In Nichols *v*. Pinner, the circumstances showed that Pinner made the purchase with an honest expectation of paying for the goods and retrieving his business. In Hennequin *v*. Naylor, there was no reason for any such expectation.

As a general rule, it must be left to the jury to say whether the purchaser, in such cases, honestly believed that he could pay for the goods. If he does not believe it, and purchases without disclosing his insolvency, I understand it is for the jury to determine whether the concealment was fraudulent or not.

Good faith towards those who have dealt with the purchaser upon the faith of his former good standing requires him to disclose his changed circumstances, if they are such as to justify a belief that he will be obliged to stop payment.

The true test is, not whether the vendee in such a case omitted to disclose his circumstances, but whether he honestly intended to pay for the goods at the time of the purchase. This is one question.

Another is, whether the vendee in such case was guilty of a fraudulent concealment, which is perhaps the same question in another form. If the purchaser does not intend to pay for the goods in such a case, his omission to disclose his insolvency would, I think, be evidence from which the jury must find a fraudulent concealment. But an embarrassed merchant may expect to retrieve his position, and may purchase goods with an honest intention to pay for them, founded upon reasonable expectations. In the latter case, it seems his omission to disclose his circumstances would not be fraudulent unless coupled with some deceit or artifice calculated to mislead the vendor, and throw him off his guard. This is all that was decided in Nichols *v.* Pinner; and it will be seen that it does not aid the defendant in the case at bar, where the purchase was made without any expectation on the part of Warner & Co. of being able to pay, so far as the evidence discloses their situation. Their failure and assignment within six days after their purchase, without any satisfactory explanation, was evidence to be submitted to the jury, from which an inference could be fairly drawn, that at the time of the purchase they had no reasonable expectation of being able to pay the plaintiff for the goods when called upon for that purpose. And if they had no reason to believe that they would be in a condition to pay for the goods when payment was called for, or afterward, the jury may infer that they intended to cheat and defraud the plaintiff out of the same.

The judgment should be affirmed.

PECKHAM, J.—The law of this case is settled, in my judgment, in Hennequin *v.* Naylor, 24 *N. Y.* 129, 139, if it were left doubtful by the case of Nichols *v.* Pinner, 18 *Id.* 295, and

23 *Id.* 264. The decision of the judge, in refusing the nonsuit, and his charge, are fully sustained by that case.

There is no principle that will sanction a fraud in the purchase of goods, although the fraudulent purchaser was enabled to contract for and obtain possession of them without any false statement to the vendor.

To my mind there seems to be an absurdity in holding that such false statement is the only evidence that can establish the fraud. That is the simple principle upon which alone such a decision can be based, and there is no such principle in the law.

To establish such a fraud a party is no more confined to any particular kind or character of evidence than he is in any other case. He must prove the fraud to the satisfaction of the jury, by any competent evidence, and if he fail to make out a case sufficient to go to the jury, without evidence of false representation at the time of the purchase, then he must give that evidence or be nonsuited.

To avoid the sale as fraudulent the jury must be satisfied, by the proof, that the purchaser intended, by the purchase, to defraud the vendor; that he never intended to pay for the goods. That proof will differ necesarily in practice as much as the conduct of men varies. To hold that affirmative misrepresentation is indispensable to avoid a sale is to declare that that is the only mode in which a fraudulent purchase can be made, that all others are honest and legal.

Take a case: A country merchant has traded in the city for many years, and by his uniform and prompt payments established a high credit. His city friends, after such experience, no more think of inquiring as to his pecuniary condition than they would of inquiring of their bank whether it would pay their checks when their account was good. Yet this merchant has been gradually running behind for a year or two. Finally, he decides to fail, and make money in that way; a large judgment is confessed or recovered; he tells the sheriff he has not sufficient assets then, but will have soon from New York; goes to New York and buys largely on his old credit, but affirmatively states no falsehoods; the goods are sent home and immediately levied upon, and he fails as he intended. Were these purchases

fair and legal ? Did the sheriff get any title by his levy ? Very clearly not, as I think we all agree.

In principle that does not differ from the case at bar.

Why did these purchasers stop payment, fail and assign ? There is no pretense, in the evidence, that they had lost a dollar unexpectedly or otherwise; a house in New York had not honored their drafts for five or six thousand dollars; the house had not failed; these purchasers had lost nothing by them, so far as the evidence shows. They overdrew their bank account on the same day they made the assignment.

From its great length and the care with which it is stated to have been drawn, they must have been actually engaged in making their assignment at the time they overdrew their bank account. Instead of proving their credit, this simple fact unexplained proved another fraud committed, with confessed knowledge of their condition.

It is not necessary to refer more especially to the testimony; enough was shown, in our judgment, to make a case for the jury, and the charge was unobjectionable. The judgment should be affirmed.

All the judges concurred, except PORTER, J., not voting.

Judgment affirmed, with costs.