Opinion, General Term op the City Court.
Hall J.
The affidavits presented in this matter, unexplained, make out a very strong case against defendants of purchasing a large and unusual stock of goods on the eve *623 of failure, and would unquestionably sustain an order of arrest, and I am of the opinion that the plaintiffs make out a sufficient prima facie case of fraudulent disposition of their property to justify the issuing of an attachment.
The defendants had only one place of business, and a small one. They bought extraordinary amounts of goods immediately before their failure, and after the busy season was over, and when plaintiff went to their store to look at the stock and to ascertain what had become of the large quantity of goods purchased from them and others, there was little stock on hand, and only $169 in money, and a great deficiency in assets ; and defendants did not account for the disappearance of the stock and refused to show their books. I am of opinion that under the facts disclosed in plaintiffs’ affidavits the defendants were at least called upon to explain, as the inference of fraud in the entire transaction is irresistible. (
The order appealed from should be affirmed, with costs to, respondents.
McAdam, Oh. J., concurred.
From this order of affirmance an appeal was taken to, general term of the court of common pleas.
Morris J. Hirsch (Blumenstiel & Hirsch), for defendants, appellants.
The affidavits do not support the charge of removal and disposal of property to cheat and defraud creditors; they are deficient in fact, and none of the details are set forth to warrant the court in drawing the inference that defendants have been guilty. At best it might be that they have been guilty of fraud in contracting a debt, for which no attachment will lie.
I. hfo fraudulent disposal of property is shown. Whiting v. Lebenheim, 14 "Week. Dig., 415. Fraud is not to be presumed, but proved, and proved satisfactorily. Shultz v. Hoagland, 85 N. Y., 464; Hoyt v. Godfrey, 82 id., 669.
II. Mere conjecture, however strong, that the defendants have disposed of their property with intent to defraud creditors will not sustain an attachment on that ground. The proofs should be of such a character as to fairly justify no other construction than dishonest purposes. Herman v. Doughty, 15 Week. Dig., 94; Von Moppes v. Leimbach, 22 id., 337.
HI. It is for the judge to draw conclusions, nor the parties. The judge has no right to be satisfied unless on legal proof of facts and circumstances, not belief alone. Smith v. Luce, 14 Wend., 247; Martin v. Lawrence, 17 How., 559; Stewart v. Brown, 16 Barb., 369. It it a harsh proceeding and the afiidavits should support it. Skiff v. Stewart, 39 How., 385.
TV". A preferential assignment cannot be treated as a fraudulent disposal of debtor’s property, merely because, shortly before its execution, he purchased goods for which he had no reasonable hope of paying, or for which he did not intend to pay. Talcot v. Rosenthal, 27 Hun, 34.
V. The attachment against property held under an assignment for the benefit of creditors cannot be sustained on the ground of fraudulent transactions by defendants prior to or after making the assignment. It must be sustained on the ground that the assignment itself was made with actual fraudulent intent. Constructive fraud is not sufficient. Belmont v. Lane, 22 How., 365.
George F. Langbein (Langbein Bros. & Langbein), for plaintiffs, respondents.
*624 I. The goods were- bought suddenly in large quantities from October 1st to December 2, 1885. Nine days after the last sale, the assignment was made of all the property recently bought in such unusual large quantities, not already removed and disposed of, for the alleged benefit of creditors, but with the preconceived intent and design to cheat and defraud them. The goods were attached in the hands of the assignee, because they had been bought with intent not to pay for them, and with the intent to remove and dispose of them, and to make an assignment of them for the alleged benefit of creditors generally.
II. A plain case of the goods having been obtained by fraud, and then apparently assigning them with the intent to defraud, is made out. Also that the goods disappeared, or were removed and disposed of, without showing proceeds therefor.
First. Nine hundred and thirty-six dollars and twenty-six cents of goods were bought from October to December; $85.19 paid on account November 30, leaving $851.07; two days after, fifty-two dollars of goods were bought, and thus really only $27.55 paid on account. December - 11th they failed, falsely stating the debt to be $734.82.
Second. A detailed statement and analysis of the quantity of goods bought from January to December, shows the fraudulent purchases on the eve of failure.
Third. The schedule to the assignment show other purchases in a liability of $21,401.38 against actual assets of only $9,559.43, a deficiency of $11,841.95; and this, with furniture requiring large space. The place of business being small there was no appearance of the goods, except the sixty yards, or in the ■ schedules or figures, and they acted to conceal all knowledge by concealing their books.
Fourth. From what motive were these goods purchased, in fraud, so close on their failure ? Why accumulate such a remarkable and extraordinary quantity of goods in a small business, the goods requiring large room and space, which they have not ? How did that large deficiency in a small business occur ? What became of the goods ?
Fifth. They purchased them knowing they could not pay for them; then to remove or dispose of them and then to cover up their disappearance by the contemplated assignment.
Sixth. Purchasing goods in fraud, for the purpose of assigning them to an assignee, is fraudulently removing them as to the creditors purchased from.
Seventh. Sixty yards of silk were apparently secreted in the closet, which was only half opened.
Hoffman, in his Provisional Remedies of the Code (page 413), says: “The attachment lies if the defendant has, or is about to secrete, any single piece of his property, and extends to all his property of every kind, because his single act shows a readiness and intent to extend the offense^as far as may bo necessary to promote his fraudulent designs. Treadwell v. Lawlor, 15 How. Pr. Rep., 8.
Mghth. Respondents asked to see the stock, and where their (appellants’) stock of upholstery goods were; not where respondent’s goods were. He saw sixty yards of silk in a half opened closet, and their goods upon one lounge. He saw no other goods. The fact of asking the question shows there was none in sight. Seeing only one lounge, when the silk bought covered one hundred and fifty, he asked. “ Where is your stock of upholstered goods ? ”
Ninth. The goods were got and assignment made just before the holiday season, when a store would have a full stock. Appellants ought to have had their store full from tire quantity they had bought.
Tenth. No stock, property or business was seen to justify such heavy liabilities and such small assets, although they did a rushing large business in the purchase of goods nine days before the assignment.
What became of the goods ? Where are the seventy parlor suits or 150 lounges. If sold, Where are the proceeds ? Only $169 cash was on hand out of $628.19 of respondent’s goods at wholesale prices for one month, and $932.42 in two months.
It is the necessary, irresistible conclusion of fact from the foregoing facts and circumstances, that the appellants have secretly and clandestinely removed and disposed of their goods and 'the proceeds thereof to cheat and defraud their creditors.
HI. The assignment is shown to he false and sham, sufficient to prove a *625 fraudulent assignment against and not for the benefit of creditors. It is shown not to be a true assignment: ,
First. There is a false statement of preference to the landlord, when there was no liability and no rent was due.
Second. The assignee falsely stated to creditors the amount of assets andx liabilities.
Third. The goods were fraudulently purchased, it would scorn, to swell the stock or assets in the hands of the assignee, and then for this purpose the assignment was made. Thus the title to the assignee is not bona_ fide, but fraudulent, and so is the assignment to him. . It is, to say the least, tainted with the fraud.
. Fourth. It is fraudulent in law¡ because it provides for payment to respondents’ creditors of only §734.83, instead of §851.07, a difference of §116.17, of which it unlawfully deprives them. This is a fraudulent intent in law, as it deprives them of that much share in the estate of appellants. See Gasherie v. Apple, 14 Abb. Pr, R, 69
Fifth. The cause of difference between the nominal and actual assets are falsely stated to be depreciation of the value of the goods, and that a large quantity of stock being out of style and can only be disposed of at a sacrifice. This was denied and the contrary was shown.
Sixth. An attachment will issue against property of the debtor who has made a fraudulent assignment, although it is valid on its face. See Skinner v. Gettinger, 14 Abb. Pr. R., 108; Thayer v. Willett, 9 id., 335; Belmont v. Lane, 33 How. Pr. R, 365.
Seventh. In Talcott v. Rosenthal (22 Hun, 573), the attention of the court was not called to Anonymous (67 N. Y., .600), or Kneeland on Attachment (§ 338, p. 157). At page 574, in Talcott v. Éosenthul, the court says: “Fraud in the purchase would undoubtedly cover the subsequent acts. The connection might even, be so close and well defined as to indicate a fraudulent purpose throughout; in effect that the disposition was but the continuation of the schrmc which or:'iiwiLd in the purchase.” See, also, Friends v. Mi hael's 15 Abb. N. C., 356, 357, 361, 363. When it is shown that the purciiaser made the purchase just on the eve of his suspension and assignment, this fue' obua-, in the absence of explanatory proof, is sufficient to carry the case to the jury. Henneguin v. Naylor, 24 N. Y., 139, citing also Johnson v. Monnell, 2 Abb. Ct. App. Dec., 470; Sahufeld v. Schnitzler, 21 Hun, 463 ; 53 N. Y., 463; *67 id., 598.
Eighth. In Sackendorf v. Ketcham (67 How. Pr. R., 537, 538), the court said: “We are compelled to consider all the facts and circumstances which surround the transaction, and ascertain from them whether a fraudulent intent has been established. It may be said, by way of parenthesis, that a party may have an innocent purpose, in so far as the moral aspect of the case is concerned, and yet the law, in considering the admitted facts, will establish, as a legal consequence of their acts, a fraudulent intent, in so far as creditors are concerned.”
Ninth. In Ross v. Wigg (34 Hun, 196), the court said • “As the motion to vacate was founded only on the original papers, the statements contained therein are, for the purposes of this appeal, to be regarded as true, and, if they establish a prima, facie case against the defendant, he should be required to satisfactorily answer or explain them before asking that important remedies for temporary security of the plaintiff should be set aside.” The facts of the case, as explained on page 300, were somewhat similar to this case, and the learned court says, at bottom of page 301: “ Slight evidence of a threatened removal or disposition
of his property will authorize the inference of fraudulent intent.” On page 303 the court says the declaration of the defendants “ are not consistent with an honest purpose, and without proof of any further act tend to show that he is about to remove and dispose of his property with intent to defraud.”
The order denying the motion to vacate the attachment and the judgment of affirmance thereof by the general term of the city court of New York, was affirmed on the argument by Bookstaver and Allen, JJ.