Hawes, J.
This case comes up on appeal from an order denying a motion to vacate an attachment. The motion was made upon the original papers, and thus all the facts are conceded.
It appears that on October 14,1884, the defendants, who were copartners in business, made a general assignment for the benefit of creditors, and. that in and by said assignment they conveyed their firm property, for the payment of their firm and individual debts, without providing that the firm debts should be first paid, and conveyed individual property for the payment of firm and individual debts, without providing that individual debts should be first paid thereout, and *356 also conveyed their respective individual property for payment of individual debts of the other party, without first requiring the firm debts and their own individual debts to be paid thereout.
It is also alleged that one of the defendants drew out $777, between October 1 and October 15, the date of the assignment, and the other, $1,129 during the same period ; and it also appears that they delivered to one Schwab, a brother-in-law of one of the defendants, between October 4 and 10, goods of the value of $1,448.45, and that since October 1, the said Schwab paid to defendants the sum of $1,329.75, which sum plaintiffs believe to be a part of the value of the goods so delivered. That the assignee, Samuel D. Lux, is insolvent, having judgments against him of upwards of $20,000.
The affidavit also contains some allegations of falsehoods, claimed to have been uttered by defendants in the purchase of some other goods. The latter allegation does not seem to be in any way material, nor is it legally alleged.
These are the substantial facts upon which the attachment was granted and sustained upon a motion to vacate, and this appeal is to determine whether the admitted facts, standing alone, justified the issuing of the writ. It will be observed in passing, that the defendants were copartners, and that the debt here sued for, was a copartnership debt.
The attachment is based upon the ground that the defendants have assigned and disposed of their property, with intent to defraud their creditors, within the provisions of section 636 of the Code.
The mere fact that the defendants made an assignment furnished no ground for an attachment, and I think it is equally clear, that if it be conceded that the assignment so made was merely void, no legal basis for an attachment would arise from that fact. In no *357 sense is this an action to set aside the assignment, and any concession on the part of defendants, looking to the proof of the invalidity of the assignment, is wholly valueless to the plaintiffs upon this appeal, except so far as it may be deemed evidence of other and distinct facts.
A void assignment is not necessarily fraudulent in an action brought to set it aside, and pre-eminently is it true when considered in the light of the present action. It may be justly said, that the right to an attachment depends upon the intent of the parties to hinder, delay, and defraud their creditors, and proof of this intent is fairly inferable from the very words and character of the assignment, but this arises, not from the fact that the instrument is void, and that the property has been placed beyond the reach of the assignor’s creditors by means of this void instrument, but from the fact that it contains evidence of the purpose of the assignor to delay and cheat his creditors, and that that purpose has been evinced by the acts which appear in the instrument itself.
The question of constructive fraud is necessarily involved, and without enlarging upon the general question, I deem it sufficient to say that, in my opinion, such a fraud furnishes sufficient ground to justify an inference of frudulent intent within the provisions of the Code governing provisional remedies. A disposition of property, which by the very terms of the instrument wrongfully and illegally deprives a creditor of his just rights, is to my mind proof conclusive of the intent of the assignor to so deprive him. In strictness there is no moral question involved in determining intent, for it is of course wholly immaterial what the assignor might declare under oath as to what he thought of it at the time, or what as matter of fact he did think of it, provided it appears as a strict legal conclusion that the wrongful act did hinder and delay *358 creditors; for it is apparent that, inlaw, it is to be presumed that a person intends to do what he did do, and if the act was a wrongful and illegal one, and a harmful result followed, I think it must be assumed that it was intended. In one sense it might be said that this general rule would make all void assignments fraudulent, inasmuch as the act is illegal, and as a fact creditors are delayed, but I think the distinction is very manifest. In cases like Smith v. Tim,* , 14 Abb. N. C. 447, where the assignment is void by reason of an insufficient acknowledgment, or where it is invalid because of certain irregularities, it is apparent that the act as such was not illegal, as involving any positive wrong-doing on the part of the assignor, but its invalidity arises wholly from the provisions of the law. The case of Milliken v. Dart, 26 Hun, 24, which is so often referred to upon these motions, would seem to come within the latter class, and the ruling in that case must, it seems to me, be restricted to all such cases.
The cases of Cunningham v. Freeborn, 11 Wend. 240; Wilson v. Robertson, 21 N. Y. 587 ; Collomb v. Caldwell, 16 N. Y. 484; Kavanagh v. Beckwith, 44 Barb. 194, and Forbes v. Waller, 25 N. Y. 430, would seem to be conclusive upon the question of the fraudulent character of the assignment, and the power o,f the court to declare the fraudulent intent from the instrument itself. In Coleman v. Burr, 93 N. Y. 31, the court expressly holds, that although the referee held that the transaction was fair and honest, yet the facts were such vthat the inference of fraud was irresistible, and “although he (the referee) has characterized the transactions as fair and honest, that does not make them innocent, nor change their essential charac *359 ter in the eye the of law. Mr. Burr must be deemed to have intended the natural and inevitable consequence of his acts, and that was to hinder, delay and defraud his creditors.” It is clear, therefore, that constructive fraud invalidates the instrument if directly attacked, and I fail to see why it cannot be held as much an inferable fact when used as evidence to establish a faudulent intent, within the provisions of section 636 of the Code. But while this is my conviction, I am bound to say that the law upon this question cannot be deemed settled. The case of Mil liken v. Dart (above) clearly holds, that a provision in an assignment which the courts have declared to be indicative of an intent to defraud, within the meaning of the statute of frauds, does not establish that intent within the provision of section 636 of the Code. I have referred to this case above, and have suggested a modification of its apparent force, but in view of the facts in the case I cannot deem it very satisfactory. It is true that it discusses the general question that the mere making of an invalid assignment gives no ground for an attachment, and declares that “ there must be something more to establish the intent required by the Code, when the assignment is made in good faith, and without any actual intent to defraud, than the mere fact that an invalid provision is contained in the assignment.”
There can hardly be any discussion upon this proposition as defined and restricted, for it clearly declares that no actual fraud exists, and fraud is always a question of fact, and so declared to be by statute; but the trouble arises in the very nature of the case. The facts in Milliken v. Dart, under the decisions, clearly bring the case within the provisions of the statute of frauds, which declares that any “ assignment in writing or otherwise . . . made with intent to hinder, delay or defraud creditors . . . shall be void.” But if *360 that statute has declared such an assignment fraudulent and “made with intent to defraud” it is quite difficult to understand how it can be held to have been made in good faith and without any actual intent to defraud, under similar language used in the attachment laws. It may be said, however, and with great force, that the mere making of such an instrument involves no actual fraud in a technical sense, or, at least, that per se it establishes no proper proof of that fact. This was clearly held to be so in the case of Belmont v. Lane (22 How. Pr. 365), where the distinction was clearly drawn between a fraudulént assignment,.which was made “ to hinder, delay and defraud creditors,” within the provisions of the statute, and the fraud-required to be proven by the Code, which is defined. by the justice as an actual or a moral fraud, and is further defined by him as being one which would “ seem to imply an intention or attempt on the part of the perpetrator to gain or secure some pecuniary advantage for himself.” Now I am frank to say that I am unable to satisfy myself that the distinction here sought to be made is tenable, and I am clear that the definition is wholly misleading hs applied to this class of cases. It has been well said that a generous motive is consistent with a guilty intent. I have always understood and believed that if an act was performed by a party, who knew what he was doing, and the act resulted in injury, the guilty intent followed, and the law charged him with it without regard .to his kindly or malicious purpose, and much less would it inquire if he was to ‘ ‘ gain some pecuniary advantage for himself.”
In the note to case of Rex v. Pinney (5 C. & P. 266), Lord Chief Justice Tindal says, “ when a statute directs that to complete an offense it must have been 'done with intent to injure or defraud any person, there *361 is no occasion that any malice or ill will should subsist against the person whose property is so destroyed.
It is a malicious act in contemplation of law when a man willfully does that which is illegal, and which, in its necessary consequences, would injure his neighbor.” In the case of United States v. Taintor, 11 Blatchf. 375), this rule as-laid down by Lord Chief Justice Timdal is cited with approval, and the question of statutory intent very ably discussed.
An intent doubtless does involve a condition of mind, but its “moral” character is bounded and circumscribed in the eye of the law by the inexorable consequence which follows from the act done, assuming from the circumstances of the case that it was knowingly done. What his inner consciousness may have been, will be forever unknown, except as so developed, and I suspect that it answers all practical purposes, and is not unjust as establishing a rule of right and fair dealing in all matters affecting relations of men in this life, whatever may be the test in the life to come.
Applying these principles to the case of an assignment, it would seem that if a person makes such a disposition of his property as to be not only illegal but harmful to his creditors, actually depriving them of their rightful share in the assets, the assignor should be held chargeable with doing intentionally what he has actually done; and pre-eminently does this inference seem just in a case where the statute has declared it to be so made. Such a fraud seems to me to be an actual fraud in law, without regard to whether it can be considered a “moral” fraud, with all the metaphysical distinctions' which such a definition might imply. But in view of the decision in Milliken v. Dart, it must be said that the question is still undetermined in so far as it may be applicable to provisional remedies, and it may be that it will be held to be a *362 departure, to be followed by more pronounced decisions upon the subject. It is certainly analogous to the cases of Birchell v. Straus (8 Abb. Pr. 54), and Spiers v. Joel (1 Duer, 669), which held that it was insufficient to sustain an order of arrest. As I construe the cases of Cunningham v. Freeborn, however, and other cases referred to above, I think that the allegations which appear in an assignment constitute facts which carry within themselves all the necessary proof of intent, and that these facts, with the inferences which inevitably follow, constitute evidence to be used in attachment or other proceedings, where the question of intent is involved, and are sufficient to confer jurisdiction (See McConnell v. Sherwood, 84 N. Y. 522).
I have referred to this matter at some length, in view of the argument which was had upon the hearing of this appeal, and the frequency with which the case of Milliken v. Dart is cited upon motions to vacate attachments, and if the respondent’s version of the provision of the assignment should be deemed correct, I have no doubt, in view of what has been said above, that the order appealed from should be affirmed. If the defendants had conveyed their firm property for the payment of their firm and individual debts, without making provision that the firm debts should be first paid thereout, I have no doubt that that was such an act as would justify the court in holding that there was sufficient evidence, to justify a judicial belief that the defendants were disposing of their property with intent to hinder, delay and defraud their creditors. But the whole allegation must be read together, and it clearly appears, that the defendants, after making certain preferences, conveyed all their property to an assignee, to pay all their debts, and they failed altogether to make any provision as to the order in which they should be paid. Is such an assignment *363 fraudulent, and does it evidence any intent on the part of the assignor to hinder or cheat his creditors ? It must be borne in mind that a general assignment is in no sense a statutory proceeding, but merely a contract whereby the assignor conveys his property to another person, who agrees to receive it and to pay it out to the assignor’s creditors. Statutes restrict and limit these conveyances, but in no sense is their character changed as a purely personal and private disposition of property. The only requisites as to its formality are that it shall be in writing, and acknowledged by the assignor, that the assignee shall signify his assent in writing and acknowledge it, and that it be recorded. The statute in no respect regulates the method of its distribution, but it may be attacked as fraudulent, if the disposition of the property, as evidenced in the instrument, is such as to defeat and defraud creditors, and this arises not because of any statutory requirement, but because of some manifest purpose therein appearing that the just and rightful claims of creditors are in some manner subverted.
Applying these principles to the case at bar, we are led to inquire what just claim of the plaintiff has been ignored. The assignee is admittedly in rightful possession of all of defendants’ property for the purposes of distribution among the defendants’ creditors, but he is wholly without instructions as to how he shall distribute. Although the assignment is not a creature of the statute, the assignee is recognized by the law as holding a trust, and he cannot escape from the responsibilities and the duties which such a relation imposes. Whatever he does will be presumably done according to law, and if the law governs such a distribution, the plaintiff can suffer no harm by reason of defendants’ neglect to make the usual provisions as to the disposition of his estate.
The bankruptcy laws have always been very *364 explicit upon this point. “ The joint estate must be applied first in payment of joint creditors, and the separate estate in payment of separate creditors, and only the surplus of each estate is to be applied in satisfaction of the other class of creditors.” This same rule applies, as I understand, to all cases where there is an administration in equity between firm and separate creditors. Mr. Pollock, in his Treatise on Partnership, gives an interesting history of this rule of distribution, and describes it as a “sort of rough code of justice,” and as at variance with the mercantile system of settling the account of a firm, citing the French Code as more consistent, which provides that the creditors of the firm have a prior claim on the partnership property, and may also come upon the separate property in competition with the separate creditors.
. The German Code has a somewhat similar provision, while the law of Scotland declares that “upon the sequestration of copartners, their separate estates are applicable to the payment, pari passu, of their respective separate debts, and of so much of the partnership debts as the parthership estate is insufficient to satisfy. The creditor in a company debt, in claiming upon the sequestrated estate of a bankrupt partner, must deduct from the amount of his claim the value of his right to draw payment from the company’s funds, and he is ranked as a creditor only for the balance.” The peculiar character of this provision is, as he suggests, to be accounted for from the fact, that in Scotland the firm can be bankrupt without the partners being bankrupt.
The English rule, however, has been uniformly as stated above, and in the main it has been adopted in this country; but it does not appear to be uniform, for in Vermont, and also in Connecticut, the rule as set forth in the French Code seems to prevail, for it is there held that the separate creditors shall have no *365 preference over joint creditors as to the separate estate of the debtor partners (Camp v. Grant, 21 Conn. 41; Bardwell v. Perry, 19 Vt. 292).
The origin and history of the rule as established in this State is fully discussed in Murray v. Murray, 5 Johns. Ch. 73, and although that case was one relating to the distribution of the estate of a bankrupt, the rule is equally applicable to that of an insolvent, in so far as equitable principles are applicable. Whatever may be the rule adopted in Vermont, Connecticut, Alabama and some other States, it seems very clear that in this State, copartnership assets and individual assets are separate and independent funds, which are given to the assignee, to be paid out to several and independent classes of creditors, whose rights are clearly defined and restricted in law. The court in Scott v. Guthrie, 10 Bosw. 408, says: “ They (referring to these two funds) are as distinct in their nature as two kinds of property, and although joined in an assignment of them for different purposes, by one instrument, motions in regard to the disposition of one cannot thereby be made to operate on the disposition of the other in regard to which no such or similar motion exists.” The error arises from considering the property assigned entire, the creditors of the firm and individual partners as one body having equal rights, the instrument as one, and the purpose as to the whole, single. Mr. Bishop, in his work on Assignments, page 173, has made a most careful analysis of this question. See also Nicholson v. Leavitt, 4 Sandf. 252; Davis v. Howell, 1 Am. Insolv. Rep. 357, and In re Shipman, 1 Id. 413.
If the principle above enunciated is true, it follows as a necessary sequence, that, so far as the plaintiffs are concerned, they are deprived of no rights by reason of defendants’ failure to designate the distinct funds and the distinct creditors. For as copartnership cred *366 itors they are entitled ex aequo et bono as well as by the strict rule of law to the copartnership assets, and technically to no more, so far as the validity of the assignment is concerned, for the defendants could .have assigned their copartnership debts, and could have omitted altogether their individual assets and their individual creditors, without impairing the assign-. ment, as seems to be held in Bogert v. Haight, 9 Paige, 296; Collomb v. Caldwell, 16 N. Y. 484; but even if assigned, any rights which the plaintiffs may have as to any surplus will be protected by the distributioti which the law has guaranteed to them.
It may be said, in passing, that it does not appear that the defendants were owing any individual debts, and non constat, but that the plaintiffs are not injured,. and cannot be heard to complain ; but even if it were so, the assignment would still be valid. The assign- ■ ment contains no directions to the assignee to do any thing which is unfair, illegal, or unjust, but he is bound in law to make a proper and presumably a legal distribution of the assets.
The law fully supplies any omissions of that kind, and no wrongful or illegal distributioncan be assumed or inferred. In my opinion, therefore, the assignment is good and valid, and no inference is established from the facts alleged that there was any fraud intended, either “ moral” or otherwise, which would justify the issuing of the writ of attachment herein.
The fact that the assignor is insolvent is no ground to set aside the assignment, much less to justify.proceedings for an attachment. See Brennan v. Wilson, 4 Abb. N. C. 279; Bostwick v. Bennett, 74 N. Y. 317. Neither is the fact that the defendants drew out of the business $1,906 between October 1 and October 15, for the presumption of law is, that it was drawn out for some legitimate purpose, and was so used, and nothing *367 is shown to the contrary, and for all that appears it went to buy goods, or pay debts.
The fact that they sold goods to A. Schwab of the value of $1,448-45, between October 4 and October 10, is of no importance, especially in view of the proof which appears in the affidavit, that they were substantially paid for by Schwab.
The order of the special term must be reversed, and the attachment vacated, with costs.
Note.—In Peckham v. Mattison (N. Y. Supreme Court, Otsego Special Term, September, 1884), it was held that, as the creditors of a firm are also the creditors of the individual members of such firm, one partner cannot be permitted to diminish the partnership assets to the prejudice of those who are not only the creditors of the firm, but also of each individual member; that the paramount' right of the firm’s creditor to its property cannot be impaired by any consideration of the interest of an individual partner, and an assignment which defeats that right, or hinders or delays the creditor in enforcing it, is a violation of the statute and a fraud upon such creditors.
But that the rule which avoids an assignment by a firm which prefers the debts of a partner, does not apply, where the debts preferred are those of a firm composed of a portion of the members of the • firm assigning, and that such an assignment is not fraudulent against creditors.
Trial by the court.
The action was brought by Merritt Peckham and S. Townsend Peckham, partners as J. S. & M. Peckham, against Silas S. Mattison, James E. Cooke and William Cooke, partners as S. S. Mattison & Co., and James P. Kenyon, as assignee of the latter firm, to set aside the assignment.
The material facts appear in the opinion.
John W. Boyle, for the plaintiffs.
Matter son & Barrington, for the defendants.
Martin, J.
This was an action in the nature of a creditor’s bill. It was brought to set aside a general assignment for the benefit of creditors made by the firm of S. S. Mattison & Co. By that assignment seventeen notes, made and indorsed by said firm, were first preferred, and a debt of about $10,000 due James E. Cooke & Co., was to be next. paid from the proceeds of the property assigned. *368 These notes were made and indorsed by the firm of S. S. Mattison & Co., and delivered to the firm of James E. Cooke & Co. They were given in part payment, of a debt owing by S. S. Mattison & Co. to James E. Cooke & Co. Upon receiving them, James E. Cooke & Co. gave S. S. Mattison & Co. credit upon their account for the amount of such notes, which left a balance of about $10,000 due from Mattison & Co. to Cooke & Co. The firm of S. S. Mattison & Co. was composed of S. S. Mattison, James E. Cooke and William Cooke, and was engaged in the hardware business, in Morris, ET. Y.
James E. Cooke and William Cooke constituted the firm of James E. Cooke & Co., and were engaged in the banking business at the same place. The hardware business carried on by Mattison & Co., and the banking business carried on by Cooke & Co., were each separate and distinct from the other. The notes thus preferred were made on the eve of the failure of Mattison & Co., and when both of said firms were insolvent. These notes were delivered to the holders, to secure debts which were owing to them, by the firm of Cooke. <& Co., and were received by them under circumstances which would prevent their being treated as bona fide holders for value, and without notice, or their acquiring any rights which were superior to those of James E. Cooke & Co. ’
The single question presented on the trial was, whether the preferences contained in the assignment of S. S. Mattison & Co. rendered it void as to the other creditors.
The contention of the plaintiffs is, that the execution and delivery of these notes to Cooke & Co., who were members of the firm of S. S. Mattison & Co., the delivery of them by Cooke & Co. to their own creditors, and the preference of the holders of such notes and of the debt due Cooke & Co., made by such assignment, Was, in effect, a misappropriation of the partnership property for the benefit of the individual members of the firm, or their individual creditors, and hence, fraudulent in fact, as well as in law, as to the creditors of S. S. Mattison & Co.
In the case of Wilson v. Robertson, 21 N. Y. 587, it was held, that “ The appropriation by an insolvent firm of partnership property to the payment of individual debts of one partner, was not simply void, but that it was fraudulent and avoided the assignment, and that, too, in a case where the joint assignment included some individual property of the partner whose creditors were preferred, and he had brought into the partnership stock an amount equal to his individual debts thus preferred, while the other partner contributed to the capital an insignificant sum, less than the probable excess of the assigned estate after paying the preferred debts of his copartner.” *369 The same doctrine was held in the case of Hurlbert v. Dean, 2 Keyes, 97; Ransom v. Van Deventer, 41 Barb. 307, 316; Menagh v. Whit-well, 52 N. Y. 146; Leslie v. Rugg, 4 Hun, 410.
In the Matter of Rieser, where a firm indebted to one of its partners for goods sold to it by him, became insolvent, and made a general assignment, the partner also became insolvent and made an assignment for his creditors. Upon an accounting, the assignee of the partner was allowed to prove the amount due from the firm to his assignor as a firm debt, and to share in the distribution of the assets of the said firm with the other firm creditors. It was held that this was erroneous; that such debt could be paid only after all the other creditors of the copartnership had been fully paid. 19 Hun, 202; affirmed 81 N. Y. 629.
The principle established by the authorities seems to be, that as the creditors of a firm are also the creditors of the individual members of such firm, an individual member cannot be permitted to diminish the partnership assets to the prejudice of those who are not only the creditors of the firm, but also of each individual member ; that the paramount right of the creditor of the firm to its property cannot be impaired by any consideration of the interest of an individual partner, and an assignment or conveyance which defeats that right, or hinders or delays the creditor in enforcing it, is a violation of the statute, and a fraud upon such creditors.
The doctrine of the cases cited is not questioned by the defendants. They admit that if by the assignment in question the individual debt of a member of the firm had been preferred, it would have rendered the assignment fraudulent and void as to the creditors of the firm.
But they contend that the rule is different where the debts preferred are those of a firm engaged in carrying on a distinct and separate business or trade, even though such firm is composed of a portion of the members of the firm making the assignment sought to be set aside. Thus, the real question presented in this case is, whether the rule of law is the same in a case where the debts preferred are those of a firm composed of a portion of the members of the firm assigning, as it is in a case where the preference is of a debt due an individual member of such firm.
In determining this question we are led to inquire, first, whether the debt of Cooke & Co. was one that would have been provable against the assignee of Mattison & Co., and have entitled the holders to have shared equally with the other creditors of that firm in a distribution of its assets, if this assignment had been without preference. In other words, did the other creditors of Mattison & Co. *370 possess any right to the property of that firm, or to have their debts paid therefrom, which was superior to that of the firm of Cooke «fe Co.
“Where all the partners bec.ome bankrupt, the general rule is, that the separate estate of one partner shall not claim against the joint estate of the partnership in competition with the joint creditors, nor the joint estate against the separate estate in competition with the separate creditors.” There are, however, exceptions to this general rule, among which is the following: “Where some of the members of a partnership form an entirely distinct firm, carrying on a distinct trade from that of the general partnership, and where articles of one trade have been furnished by one firm to the other.” Collyer on Partnership, §§ 498, 499.
Lindley, in his work on the Law of Partnership, recognizes the general rule, and then states the exceptions as follows: “If one of the two firms, carrying on distinct trades, becomes creditor of the other, in the ordinary way of their trade, the creditor firm may prove against the joint estate of the debtor firm, in competition with its other joint creditors, although one or more persons may be partners of both firms.” Lindley on Partnership, m. p. 996. ,
Parsons says : “We have before considered the case of parties who are actually partners, but do not appear as such. If, however, they do not seem to constitute two distinct firms, but do so actually, as for example: if out of four who are partners for one kind of business, two are partners in another entirely distinct business, and these two firms deal with each other, there may be proof by one against the other, or by the creditors of either against its own fund, in the same way as if the two firms were formed of different persons.” Parsons on Partnership, 501.
Story states the principle thus : “Another relaxation of the rule, that a partner cannot prove against a firm, is admitted, where there is a minor partnership, or hpuse of trade, constituted of persons who are members of a larger firm, and there are distinct dealings between the distinct houses of trade, and both firms become bankrupt, the one being indebted to the other in respect to such dealings. In such' case, proof may be made of the debt, in the same manner as if the dealings had been among strangers.” Story on Partnership, § 394,. and cases cited.
. In Lx parte St. Barbe, 11 Vesey, Jr. 413, Lord Eldon says: “There have been cases of a trade carried on by three, and distinct trades by two, and .by one of them, where this sort of proof of a debt, distinctly due from one partnership.to the other, has been permitted as between the partners so engaged in different concerns. The course *371 of the authorities has been that a joint trade may prove against a separate trade, but not a partner against a partner.” In the case of Shakeshaft, Stirrup & Salisbury, Lord Thctrlow went upon this distinction: “ that, where there is only one partnership, arranging different concerns, belonging to them all, in different ways, for the benefit of different parts of that joint concern, as in that instance, the three - partners carrying on the business of cotton manufacturers in Lancashire, and two of them in London, there could not be proof of the three against the two ; but, if the trades are perfectly distinct, then the three, as cotton manufacturers in Lancashire, might be creditors upon the separate concern of the two, as ironmongers in London. I am inclined to abide by that case and Ex parte Johns.
“Where two or more partners, but not all of a larger firm are partners in a distinct trade, and the aggregate firm becomes bankrupt, and one of the firm is indebted to the other in respect of a dealing arising out of its distinct trade, such debt can be proved by one firm against the other.” Ex parte Castell, 2 Glyn & Jameson, 124.
This exception is also recognized by Mr. Justice Boardman, in his opinion, in the Matter of Rieser, supra. After stating the general rule as above, he says : “There are two exceptions to this general rule, one arising out of fraud, &c.,—not applicable in this case,—and the other, where two firms are dealing with each other, and some of the parties are the same in both firms.”
In Hayes «. Bement, 3 Sandf. 394, where a limited partnership had become insolvent, and the special partner was a general partner in another firm, to which the limited partnership was indebted, it was held that neither the debt due such firm, nor such general partner's interest therein, was postponed under the provision of the statute directing that a special partner shall not claim as a creditor against the limited partnership of which he is a member, until the claims of all the other creditors are satisfied. And in delivering the opinion in that case, the court says: “If the same person be a general partner in two different firms, one of which firms become insolvent or bankrupt, while the other firm is solvent, and a creditor of the insolvent or bankrupt firm, then it is well settled that the creditor firm_ may recover its debt or its dividend from the insolvent or bankrupt firm, notwithstanding a member of the insolvent or bankrupt firm is also a member of the solvent creditor firm ” (p. 396).
The principle and reasoning in this case was expressly adopted by the court of appeals in the case of Hayes v. Heyer, 35 N. Y. 326, 328; see also Story's Eq. Jur. § 680, and cases cited; Fanshawe v. Lane, 16 Abb. Pr. 71.
Within the principle of these authorities it seems quite clear that *372 the debt of Cooke & Co. was one- that would have been provable against the estate of Mattison & Co., and entitled the holders to have shared equally with the other creditors of that firm, if the assignment had been without preference; and that the other creditors of Mattison & Co. possessed no right to the property of that firm, or to have their debts paid therefrom which was superior to that of Cooke & Co.
If this be so, and I think it must be so held, then I am unable to discover any principle upon which the assignment in question can be set aside. That preferential assignments are not, for that reason, void is well established in this State. Jacobs v. Remsen, 36 N. Y. 668; Hauselt v. Vilmar, 76 Id. 630. It is not pretended that there was any actual fraud in making this assignment, except such as was indicated by the preference given to the debts of Cooke & Co. Those debts being valid against Mattison & Co., and in all respects equal with those of the other creditors of said firm, their preference by the assignors did not, I think, render the assignment void.
This case does not come within the principle of the case of Wilson o. Robertson, and the other cases above cited. In those cases the assignments were held to be fraudulent as to the creditors of the assignors, on the ground that by the assignments there was an appropriation of the firm property to pay the individual debts of one of the partners, which was in effect a gift from the firm to the partner—a reservation for the benefit of such partner or his creditors to the direct injury of the firm creditors.
That it was an assignment for the payment of debts for which neither the firm nor the other members therein were liable. Not so in this case. Here the debt preferred was the debt of the firm. It was the debt of- all the members. The holders of it were entitled to share in the property of the firm the same as any other creditor. Their rights were in equity the same in all respects as those of any other creditor of that firm. If this assignment had preferred other creditors of the firm, it would have been valid. I can see no reason for holding differently as to the preference of the debts of Cooke & Co.
I am of the opinion that the assignment sought to be set aside was neither fraudulent nor void, as to the creditors of S. S. Mattison & Co., and that the plaintiffs’ complaint should therefore be dismissed, with costs.
An appeal from this decision is pending.

 But see an opposing decision by the supreme court on the same facts, in Claflin v. Smith, 15 Abb. N. C. 241.