PARTNERSHIP—INSOLVENCY—FIRM AND INDIVIDUAL DEBTS.

> A note of one partner indorsed by his copartner is not a firm debt, and on a general assignment of the firm property and the estates of the individual partners for the benefit of creditors, with no reference to the payment of claims of the creditors, the note cannot be allowed against the firm assets until payment of the claims against the firm.

In the matter of the assignment of Stephen P. Hallock and Roscoe C. Hallock, as copartners and individually, for the benefit of creditors, to James H. Lapman.   Claim against partnership property of firm disallowed.

The National Bank of Coxsackie filed with the assignee a claim for two notes, amounting to $5,000, with interest, made by Stephen P. Hallock and indorsed by Roscoe C. Hallock.   These notes the assignee admits are a proper claim against the assigned estate of Stephen P. Hallock and Roscoe C. Hallock individually, but denies that they are a claim against the assigned estate of S. P. Hallock & Son, and insists that such claim is not entitled to share in the estate of the copartnership until after the copartnership creditors are paid.

N. A. Calkins, for assignee.

Carroll Whitaker, for Samuel M. Gray and Austin Nichols & Co.

Clarence Howland, for Hammond & Co.

Alberti Baker, for Greenville Center Creamery Co. et al.

Osborn, Bloodgood & Wilbur, for National Bank of Coxsackie et al.

TALLMADGE, J.   Two questions arise under the stipulation for my consideration:  First.  Is the National Bank of Coxsackie entitled to share in the firm assets of Stephen P. Hallock & Son with the other firm creditors?   Second.   Should not the bank in equity be required to first resort to its collateral security before being entitled to share in the assets or property of the firm, if they are entitled to share at all in such assets?   The doctrine has long been settled that, in case of the insolvency of a firm, the partnership property must be first applied to pay the partnership debts, and individual property to pay the individual debts of the members of the firm. The notes under consideration in this case were the notes of Stephen P. Hallock, one member of the firm, indorsed by Roscoe C. Hallock, the other member of the firm.   As between themselves, it was an individual indebtedness of Stephen P. Hallock; Roscoe standing simply as surety.   As between themselves and the bank, it was a joint and several obligation, and not a partnership indebtedness or obligation, and in marshaling the assets should the partnership property be used for the purpose of satisfying this joint and several obligation, the same as though it were a partnership debt?

In discussing the rights and equities of partners, the reported cases in the Court of Appeals are not in harmony in reference to wherein the equities lie. It was said by the chancellor in Kirby v. Schoonmaker, 3 Barb. Ch. 46, 49 Am. Dec. 160:

"The copartners, however, have certain equitable rights between themselves, arising out of the copartnership, by which either can compel the other to have all the effects of the firm applied, in the first place, to the payment of the debts due from them as copartners. And this, as is said in the books, gives the joint creditors a quasi equitable lien upon the property of the firm, to be worked out through the medium of the equity of the copartners as between themselves, and with their assent, or, at least, with the assent of one of them."

In Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370, Mr. Justice Strong said:

"No doubt the effects of a partnership belong to it so long as it continues in existence, and not to the individuals who compose it. The right of each partner extends only to a share of what may remain after payment of the debts of the firm and the settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. This is an equity the partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have a privilege or preference, sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of a firm in course of liquidation, to the exclusion of the creditors of its several members. Their equity, however, is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors of the firm cannot be. But so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets as a partner, a court of equity will allow the creditors of a firm to avail themselves of his equity, and enforce through it the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration."

Under the principles thus cited, it is contended that, inasmuch as this was a joint indebtedness to the bank, and the equities being with the partners, who were owners of the partnership property jointly, such partnership property should be used for the purpose of paying this joint indebtedness equally with the partnership indebtedness; and we are referred to the case of Saunders v. Reilly, 105 N. Y. 12, 12 N. E. 170; 59 Am. Rep. 472, as authority upon the contention of the bank. It was held in that case that all the members of a firm may sell the partnership property, even if wholly insolvent, to a purchaser in good faith, and thus convey, free from the claim of firm creditors, a good title to the firm property. Instead of selling for cash, they may transfer firm property to pay a firm debt, and they may transfer the firm property to pay a joint debt for which they are jointly liable outside of the business of the firm, and the joint creditor will obtain a good title to the firm property; that Tooker and Irwin could have taken their firm property, and applied it upon this joint judgment against them, and, inasmuch as they had the power and right to do that, they could have turned it out to the sheriff when he came with the joint execution against them; and, as they could have turned it out upon the debt before judgment, or upon the execution after judgment, there can be no

reason to doubt that the sheriff could take and sell it upon the execution free from the claim of their firm creditors, and, after this sale of the firm property upon a joint judgment against both members of the firm, no equity was left in either member of the firm to have the property thereafter applied in discharge of the firm debts. The court further say:

"Having been applied in discharge of the joint debt against both members of the firm, all the equities of both members in the property as against each other were wiped out; and it is only through the equity which one member of a firm has in the firm property or against his copartners that firm creditors, on the principle of subrogation, can enforce their claims against the firm property."

Under the principles stated, this decision holds that the joint property may be taken under execution to satisfy a joint debt, and that the partners may voluntarily transfer the personal property to satisfy a joint indebtedness; but it does not hold or decide that partnership property should be applied by an assignee or by a court in equitably marshaling the assets of an insolvent judgment debtor to the payment of a joint and several indebtedness of the partners, and does not disturb the principle that in marshaling assets, in case of insolvency, under a general assignment, that partnership debts should first be paid before the debts of the individual partners, whether they be joint debts or several debts. We find in the same opinion the following:

"A mere general creditor of a firm, having no execution or attachment, has no lien whatever upon the personal assets of the firm; but when a firm becomes insolvent, and thus it becomes necessary to administer its affairs in insolvency or in a court of equity, then the rule is well settled that firm property must be devoted to firm debts, and individual property to the payment of the individual debts of the members of the firm."

It is also contended that the case of Citizens' Bank v. Williams, 128 N. Y. 77, 28 N. E. 33, 26 Am. St. Rep. 454, is an authority in support of the contention of the bank. In that case Helen A. Williams was indebted to E. N. Clark in the sum of $800. She and her partner, Sophia Williams, gave him their joint and several promissory note signed by them. Sophia Williams, however, one of the partners, signed the note simply as surety; Helen A. Williams, the other partner, remained the principal debtor. They became insolvent, both as a firm and as individuals, and executed a general assignment of all their firm and individual property for the benefit of their creditors, in which they directed the notes held by Clark to be paid out of the proceeds of the firm property. An action was brought to set aside the assignment on the ground of fraud, for the reason of the direction in the assignment to pay said joint indebtedness from the firm property. The court say:

"These notes were joint debts of the defendants, for which they were jointly liable to Clark, and it was therefore not a fraud to appropriate their joint property for their payment. Clark could have recovered a judgment upon the notes against the defendants, and could by execution have seized the firm property to satisfy the judgment, and a purchaser at the execution sale would have obtained a full and absolute title to the firm property purchased. * * * It certainly cannot be a fraud upon firm creditors to apply firm

property to the payment of debts for the satisfaction of which such property could be taken."

This case is like the one in 105 N. Y., 12 N. E., and 59 Am. Rep., heretofore referred to, but does not decide the question that, in marshaling assets of an insolvent firm, joint debts, not partnership debts, can be paid from the partnership property. The court say:

"It is a mistake to suppose that the firm property is now in the hands of a court of equity for distribution and application upon equitable principles. No suit whatever is pending in equity, and no application has been made to a court of equity in reference to the firm property. The defendants have made an assignment of their firm property authorized by law, and the assignee is to dispose of it, not in accordance with the directions of any court, but in precise accordance with the terms and conditions of the assignment."

The court further say:

"It may be that, if these firm assets were to be administered in a court of equity, according to equitable principles, the court would direct the firm debts to be paid before these debts to Clark, although it is not certain that it would do so, and it is not now necessary to determine whether it would or not."

The court then proceed upon the equitable principles heretofore referred to, and state:

"These defendants, being jointly liable to Clark, have themselves provided that his claims shall be paid out of the firm assets, and there is no room for the interference of any court. As between him and them, his claim upon the firm property is just as meritorious and equitable as the claim of firm creditors. After the execution of the assignment and the provision made therein for the payment of these debts, L. Sophia Williams had no equitable claim that the firm property should not be applied precisely as she had directed it should be applied. Hence, on the principles of subrogation, the firm creditor can take no equity from her which they can enforce against the firm property, upon principles laid down in the case of Saunders v. Reilly."

In the case under consideration, it will be remembered, the assignment does not direct the payment of this joint indebtedness, but the assignment is without directions or restrictions in reference to the payment of the claims of creditors. Had the assignment directed the payment of the bank's claim from the partnership property, under the principle hereinbefore cited, neither of the partners would have had any equities left in the partnership property upon which the general creditors of the firm could make claim to payment in preference to the claim of the bank. But such partners not having directed such payment in the assignment, and the bank, not having enforced its claim by judgment and execution, must stand upon its claim as it exists.

We are clearly of the opinion that this joint and several indebtedness held by the bank cannot be classed with the partnership indebtedness in marshaling the assets of the firm for distribution under the assignment. If the equities were with the partners, and they had the right to dispose of the property voluntarily to satisfy joint, not partnership, indebtedness, and the equities in the creditors were simply derivative, the answer is that the partners have not voluntarily disposed of the property to pay joint indebtedness, but have left the disposition and distribution of the property to a court, who is to marshal the assets under equitable rules and principles.

In Friend v. Michaelis, 15 Abb. N. C. 363, the court, in treating of a general assignment without specific directions as to payment of firm creditors or other creditors, say:

"The bankruptcy laws have always been very explicit upon this point: 'The joint estate must be applied first in payment of joint creditors, and the separate estate in payment of separate creditors, and only the surplus of each estate is to be applied in satisfaction of the other class of creditors.' This same rule applies, as I understand, to all cases where there is an administration in equity between firm and separate creditors. Mr. Pollock, in his Treatise on Partnership, gives an interesting history of this rule of distribution, and describes it as a 'sort of rough code of justice.' * * * The origin and history of the rule as established in this state is fully discussed in Murray v. Murray, 5 Johns. Ch. 73, and although that case was one relating to the distribution of the estate of a bankrupt, the rule is equally applicable to that of an insolvent, in so far as equitable principles are applicable. Whatever may be the rule adopted in Vermont, Connecticut, Alabama, and some other states, it seems very clear that in this state copartnership assets and individual assets are separate and independent funds, which are given to the assignee, to be paid out to several and independent classes of creditors, whose rights are clearly defined and restricted in law. The court in Scott v. Guthrie, 10 Bosw. 408, says: 'They [referring to these two funds] are as distinct in their nature as two kinds of property, and, although joined in an assignment of them for different purposes by one instrument, motions in regard to the disposition of one cannot thereby be made to operate on the disposition of the other, in regard to which no such or similar motion exists.' The error arises from considering the property assigned entire, the creditors of the firm and individual partners as one body, having equal rights, the instrument as one, and the purpose, as to the whole, single."

Thus far we have considered the question upon the theory that the equities are with the partners. We find, however, that the Court of Appeals in more recent cases have held that the equities are with the firm creditors, who have the right to insist upon the payment of the partnership claims out of the partnership property in preference to claims of individual creditors of the firm, and that such right is inherent in the creditors of the firm.

In Menagh v. Whitwell, 52 N. Y. 147, 164, 11 Am. Rep. 683, Allen, J., says:

"The foundation of the right of partnership creditors to follow the firm property, and subject it to the payment of the partnership debts, while the right itself is recognized and favored as well at law as in equity, is not as well understood or clearly defined as is desirable in respect to legal principles affecting so largely commercial dealings and interests. It is said that partners have a lien on the property for the payment of the firm debts, and that creditors have a quasi lien, and by means of this, and through the lien of the partners, they work out an effectual remedy against the property. * * * Mr. Parsons says of this statement: 'This theory is certainly obscure, and hardly capable of being definitely stated, nor does it appear to lead in any direct or distinct way to the result for the sake of which it seems to have been constructed.' Pars. Partn. 345. Gibson, C. J., in Doner v. Stauffer, 1 Pen. & W. 198, 21 Am. Dec. 370, says that 'the principle which enables the partners to pledge to each other the joint effects as a fund for the payment of the joint debts has introduced a preference in favor of joint creditors'; but he differs from Chancellor Kent in the opinion that this preference is attributable to an inherent equity in the creditors themselves. 3 Kent, Com. 64. Judge Gibson is of the opinion that such preference of joint creditors is founded on no merits of their own. The better opinion is, at this time, in accord with the views of Chancellor Kent, that the partnership debts have in equity an inherent priority of claim to be discharged from the joint property."

In Parsons on Partnership (section 391) it is stated:

"It has been seen that joint but not partnership creditors of the partners may attach the partnership property, and hold it even against partnership creditors. It would be natural to suppose that the same rule would apply in bankruptcy, and that the joint creditors of the partners would share in the partnership assets. Such appears to be the rule in England. But in this country joint but not partnership creditors of the partners come with the individual creditors on the separate assets of the partners."

In Second Nat. Bank v. Burt, 93 N. Y. 233, Ruger, C. J., writing the opinion, says:

"Debts contracted by the individuals composing the partnership, either individually or jointly, in any other way than under the firm name, are not entitled to share in the final distribution of the partnership assets until after the discharge of all the partnership obligations"—citing Turner v. Jaycox, 40 N. Y. 470; Menagh v. Whitwell, 52 N. Y. 147, 11 Am. Rep. 683.

He further says:

"It necessarily follows that obligations incurred by the firm of Page & Co. were not entitled to be enforced against the property held under the name of White & Co. until all of the partnership debts of White & Co. had been satisfied. * * * It is based upon equities of creditors in the property of the firm to which they have given credit. The property of the creditor has been used to swell the assets of the firm, and he thereby becomes equitably entitled to a preference over individual creditors in the payment of his debt from such assets. The credit was presumably given in reliance upon the responsibility of the firm, induced by its possession and apparent ownership of its property."

In Peyser v. Myers, 135 N. Y. 604, 32 N. E. 700, Judge Andrews says:

"But the doctrine, now well settled, that in case of the insolvency of a firm the joint property [meaning firm property] must be first applied to pay the joint debts [meaning firm debts] has its foundation in the equity that the credit given to the firm is presumed to have been extended upon the faith of the joint liability, and on the fact that the property of the firm is in many, and, perhaps, in most, cases a fund derived, in part, at least, from the creditors who have dealt with the firm in the ordinary course of business. The corpus of the firm property belongs to the firm as an entity, and not to the individual partners; their separate interest being only in the surplus after an adjustment of the partnership debts and accounts, and hence the right of individual creditors is the right of their debtors in such surplus."

He further says:

"This priority of lien of the firm creditors is not divested by a transfer by an insolvent firm of the firm assets to one or more of the partners, nor can it be effected, as we conceive, by any mere change in the personnel of the firm, as by a withdrawal of one partner from the firm or the introduction of a new member."

It is contended by the bank that this case holds that debts for which the members of a firm were jointly liable are properly chargeable against the firm assets. We do not understand that this case so holds. The action was brought by judgment creditors to set aside as fraudulent an assignment for the benefit of creditors, and to procure the application of certain moneys paid to defendant in pursuance of a preference contained in the assignment. The court held, from all the facts and circumstances surrounding the transaction as to the debt preferred, that the firm as it existed had the

legal right to treat the debt as a firm indebtedness, and therefore held
that the firm as it then existed had the right to prefer such claim,
not on account of its being a joint debt of the members of the firm,
but for the reason that under the conditions it was a firm indebted-
ness ; and the court refused to set aside the assignment.

In Bulger v. Rosa, 119 N. Y. 465, 24 N. E. 853, Andrews, J.,
writing the opinion, says :

"There can be no controversy as to the rule of law governing the relations
between an insolvent firm and its creditors, and their mutual rights in re-
spect of the firm property. The partnership, as such, has its own property
and its own creditors, as distinct from the individual property of its mem-
bers and their individual creditors. The firm creditors are preferentially
entitled to be paid out of the firm assets. Whatever may be the true foundation
of the equity, it is now an undisputed element in the security of the firm
creditors."

In Gandolfo v. Appleton, 40 N. Y. 533, the court hold that, where
a partnership debt existed, and was paid partly in cash and partly
by note signed by one partner, indorsed by another, it was an individual
liability, and not a partnership liability.

In Nordlinger v. Anderson, 123 N. Y. 544, 25 N. E. 992, the
question was forcibly raised whether the debt of one partner could
be made a firm indebtedness after the giving of an individual note
and then substituting the firm note. In that case, however, the
court really determined that the original note was for a firm indebt-
edness.

In Matter of Gray, 111 N. Y. 404, 18 N. E. 719, money was bor-
rowed for the benefit of the firm of Gray & Lockwood. The payee
accepted the joint and several individual note of the parties, with
the name of Mrs. Lockwood added. Lockwood, the surviving mem-
ber of the firm, was insolvent, and there were no firm assets. There
were not sufficient assets of the estate to pay the individual and the
firm creditors. The claim was presented on judicial settlement of
the account of the administrator of Charles B. Gray, deceased, the
holder of the note claiming the right to share equally with the indi-
vidual creditors in the distribution. Judge Andrews, writing the
opinion, says :

"The payee of the note had a right to prescribe the security which he
would accept for the loan. He chose to take the joint and several individual
note of the parties, with the name of Mrs. Lockwood added. By the con-
tract it was made the several debt of each of the makers, and we perceive
no ground, in abstract justice, why Farnum or his successor in interest cannot
have the benefit of the security according to its terms, and the right to prove
the debt against the separate estate of the decedent, and share equally with
the other separate creditors in the distribution. The fact that he knew that
the money was borrowed for the use of the firm makes, we think, no differ-
ence. If he had required separate security, by mortgage or otherwise, on
the individual property of one of the firm, there could be no doubt that it
would be valid against the separate creditors of the individual partner, not-
withstanding he knew for what purpose the money was borrowed. * * *
He did not lend the money on the credit of the firm, or on the firm obligation,
but on the joint and several promise of the individuals who composed it
and of Mrs. Lockwood. We need not consider whether he could have proved
it in bankruptcy as a firm debt on showing the circumstances. This has not
been done, and there can be no question of election as between the joint and
separate estate, as there is no joint estate. We think the authorities sustain

the view above stated, and show that the debt of Mrs. Lockwood for the money paid in discharge of her obligation on the note was provable, and entitled her to share pro rata with the other separate creditors of the decedent in 'the distribution."

So that whether the equities are first with the partners or first with the creditors, the partnership property transferred by assignment to the assignee is first subject to the partnership debts, the individual property of the individual partners is first subject to the payment of his individual debts, and the partners and the creditors have the right to demand the application of the firm property to the payment of the firm debts. The bank, by accepting the note of Stephen P. Hallock, indorsed by Roscoe C., elected to continue the obligation as an individual, rather than a firm, indebtedness; and such claim, under the authority last cited, could be enforced with the individual debts against the property of the individual debtors. The bank could have demanded the firm obligation had they chosen to do so, but, having accepted the joint and several obligation of the members of the firm instead of the firm obligation, they must be held to such election. It cannot be that they are in a position in equity to enforce their claim against the individual property of the debtors, and be allowed to participate with the individual creditors in preference to firm creditors, and also be in a position to demand payment with the firm creditors out of the firm property in preference to the individual creditors of the members of the firm, at their election.

I am therefore of the opinion, after a careful consideration of the authorities cited, that the claim of the National Bank of Coxsackie should not be allowed as against the partnership property of the firm of S. P. Hallock & Son until after the claims against the partnership are first paid or satisfied from said property. Having arrived at this conclusion, it is not necessary to decide as to whether the collateral security should first be exhausted before resorting to the property of the firm.

Ordered accordingly.